## STATE vs. EDGAR M. GEER.

New London Co., May T., 1891.   ANDREWS, C. J., CARPENTER, SEYMOUR,
TORRANCE and FENN, Js.

It is provided by Gen. Statutes, § 2546, that "no person shall kill any wood-
cock, ruffled grouse or quail for the purpose of conveying the same be-
yond the limits of this state; or shall transport, or have in possession
with intent to procure their transportation beyond said limits, any of
such birds killed within this state." Held not necessary to a violation
of the second clause of the statute that the transportation or possession
should be of birds killed for the purpose of conveying them beyond the
limits of the state.

An act passed in 1882, in one section forbade the killing of woodcock,
ruffled grouse or quail for the purpose of conveying the same out of
the state, and in another section forbade the transporting out of the
state of any woodcock, ruffled grouse or quail killed within the state,
or having any such birds in possession with intent to procure such
transportation. In a subsequent revision of the statutes these two
sections were put into one, as above. Held that the revisers, in consoli-
dating the sections, must have intended only a condensation of the
statute, and could not be regarded as having intended to change the
effect of its language; and that therefore the words "such birds" in
the revision must be taken to refer to "woodcock, grouse or quail,"
and not to birds killed for the purpose of conveying the same out of
the state.

The act is not unconstitutional as restricting intestate commerce.

The state has a perfect right to enact that the birds may be killed and sold,
or held for sale, only for domestic consumption.

The birds never became articles of commerce within the meaning of that
term as used in the United States constitution; they became private
property of a qualified character.

[Argued May 27th—decided October 16th, 1891.]

INFORMATION in the police court of the city of New Lon
don, charging that the defendant, "on the 19th day of Octo-
ber, 1889, at the city of New London, unlawfully did receive
and have in his possession, with the wrongful and unlawful
intent to procure their transportation beyond the limits of
this state, certain woodcock, ruffled grouse and quail, killed
within this state after the first day of October, 1889." The
case was appealed by the defendant to the Criminal Court
of Common Pleas of New London County, and in that court

he demurred to the information. The court (*Crump, J.,*) overruled the demurrer, and the defendant not answering over, rendered judgment against him. The defendant appealed.

*R. Wheeler* and *H. A. Hull*, for the appellant.

1. The complaint does not set forth any offense under the statute. It omits to allege that the birds were killed for the purpose of conveying the same beyond the limits of the state. The complaint is fatally defective without such an allegation. The transportation of birds lawfully killed is not an offense; but the transportation of birds unlawfully killed, to wit, for the purpose of conveying the same beyond the limits of the state, is. The statute (Gen. Statutes, § 2546,) reads—"No person shall at any time kill any woodcock, ruffled grouse or quail, for the purpose of conveying the same beyond the limits of the state, or shall transport, or have in possession with intent to procure their transportation beyond said limits, any of such birds killed within this state. The reception by any person within this state of any such bird or birds for shipment to a point without the state, shall be *primâ facie* evidence that said bird or birds were killed within the state for the purpose of carrying the same beyond its limits." In some states the attempt has been made to preserve the proprietary interest of the state in game whenever killed and to prevent the exportation entirely. Our General Assembly has made no such attempt, except when the game is killed for that purpose. The manifest intent of the act is to prevent the wholesale killing of game birds for outside markets; but the killing for the markets of this state at this season of the year is freely permitted. The words "any of such birds," in the fifth line of the section, clearly refers to birds killed with the intent to transport them from the state. In *Commonwealth* v. *Hall*, 128 Mass., 411, GRAY, C. J., in construing a similar statute, says:—"The question presented by the case at bar is, whether, in the absence of any such explicit manifestation of the intent of the legislature. the words, 'any of said birds,' are to be construed in

the larger sense, as meaning any woodcock, partridge or quail whatever; or in the more restricted sense, as meaning any woodcock, partridge or quail taken or killed in this commonwealth within the times before mentioned. By the first alternative, the mere possession, in the first part of every year, of birds which have been lawfully taken or killed in another state or even in this commonwealth, and at a time when it was lawful to kill them here, would be made a punishable offense; as if, for instance, woodcock killed in the autumn should be preserved in ice after the first of January for subsequent consumption. To adopt such a conclusion, when not imperatively required by the language of the act, would be inconsistent with the ordinary rules of construction of penal statutes." Grammatically construed, " such " refers only to birds killed for the unlawful purpose. The last clause of the section which provides that possession shall be *primâ facie* evidence of the unlawful intent of the killing, repeats the words, " killed within the state for the purpose of carrying the same beyond its limits." This clause determines the gravamen of the offense of transporting. If it is held to be unlawful to transport birds lawfully killed this last clause is meaningless verbiage. Reference to chapter 102 of the acts of 1882, from which this section has been drawn, shows that the revisers have materially changed the law. The law of 1882 prohibited the selling of these birds with intent to procure their transportation. This in terms prohibited the selling of birds if killed in this state to a person intending to take them out of the state, whether lawfully killed or not. This inhibition is removed by the revision, manifestly to permit the very transaction for which the defendant is prosecuted. Even the act of 1882, in section 3, shows that the author had in mind only birds killed for the purpose of transportation. The purpose of killing, being an essential element of the offense, should have been alleged. " An indictment or information must state all the facts necessary to bring the defendant precisely within the law." *Morse* v. *The State*, 6 Conn., 13. It cannot be claimed that prosecution is impracticable under our construction, because

the last paragraph bridges over all trouble of this kind, and the first and chief offense in the statute consists in the wrongful intent of the killer.

2. The construction contended for by the state renders the statute unconstitutional. It conflicts with the sole right of Congress to regulate commerce among the several states. U. S. Const., art. 1, sec. 8. These birds when lawfully killed become property and an article of commerce. Any person receiving property or having it in his possession for exportation, has property in his hands which has begun to move as an article of interstate commerce, and after it has so begun to move all agencies employed constitute one commercial transaction. Even a negotiation of sale is sufficient. " The negotiation of sales of goods which are in another state for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce." *Robbins* v. *Shelby County Taxing District*, 120 U. S. R., 489. Whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced. The fact that there are several different and independent agencies, some acting entirely in one state and some through two or more states, does in no respect affect the character of the transaction. To the extent to which such agency acts in that transportation it is subject to the regulations of Congress." *The Daniel Ball* v. *U. States*, 10 Wall., 566. " Transportation is essential to commerce, or rather, it is commerce itself, and every obstacle to it or burden laid upon it by legislative authority is regulation." *Hannibal & St. Joseph R. R. Co.* v. *Husen*, 95 U. S. R., 465. Perhaps a state has the power to protect its game or fish by prohibiting the killing of them, but when the killing is allowed and they may be sold and become property and articles of commerce, all the freedom of commerce between the states must attach. *State* v. *Saunders*, 19 Kans., 127 ; *Territory* v. *Evans*, 23 Pacific Reporter, 115 ; *Territory* v. *Nelson*, id., 116 ; *State ex rel. Corwin* v. *Indiana & Ohio Oil, Gas & Mining Co.*, 22 N. East. Reporter, 778. In *Am. Express Co.* v. *The People*, 24 N. East. Reporter, 759, the

court says: —" The killing of quail during the months of October and November was permitted, but not for sale, not to go upon the market as an article of commerce, but for the mere use of the person who killed the birds." This statute under our construction is clearly constitutional, and should receive that constuction. *State* v. *Wheeler*, 25 Conn., 290. The reason for this is, that game birds unlawfully killed · may never become the property of an individual or an article of commerce, but if they are lawfully killed they may be sold in the markets of the state, and from those markets may be sold to people in the state or out of the state.

*S. Lucas*, State's Attorney, for the State.

SEYMOUR, J. The General Statutes, § 2530, provide that " every person who shall buy, sell, expose for sale, or have in his possession for any purpose, or who shall hunt, pursue, kill, destroy, or attempt to kill, any woodcock, quail, ruffled grouse called partridge, or gray squirrel, between the first day of January and the first day of October, the killing or having possession of each bird or squirrel to be deemed a separate offense, * * * shall be fined not more than twenty-five dollars," etc.

Section 2546 provides that " no person shall at any time kill any woodcock, ruffled grouse or quail for the purpose of conveying the same beyond the limits of the state ; or shall transport, or have in possession with intent to procure their transportation, beyond said limits, any of such birds killed within this state. The reception by any person within this state of any such bird or birds for shipment to a point without the state, shall be *primâ facie* evidence that said bird or birds were killed within the state for the purpose of convey ing the same beyond its limits."

The defendant is prosecuted for " unlawfully receiving and having in his possession, on the 19th day of October, 1889, with force and arms and with the unlawful intent to procure the transportation beyond the limits of this state, certain woodcock, ruffled grouse and quail, killed within

this state after the first day of October, 1889, against the peace and contrary to the form of the statute."

He demurred to the complaint because : "(1) The allegations contained therein do not constitute any offense in law. (2) Because in the complaint it is not alleged that the birds were killed for the purpose of conveying the same beyond the limits of the state."

It will be seen from the sections of the statute above quoted that it is unlawful to kill or have in possession for any purpose, woodcock, quail or ruffled grouse between the first day of January and October, and that it is unlawful to kill them at any time for the purpose of conveying them out of the state. Is it also unlawful to have them in possession with intent to procure their transportation beyond the limits of the state, if killed between the first day of October and the first day of January, regardless of the question whether they were killed for the purpose of conveying them out of the state ? In other words, if they were lawfully killed, that is, between October first and January first, and without any intention of conveying them out of the state, can they be lawfully held, with the intent to procure their transportation beyond the limits of the state ?

In 1882 an act was passed as follows :—

" *Section* 1. No person shall at any time kill any woodcock, ruffled grouse, or quail, for the purpose of conveying the same beyond the limits of this state.

" *Sect.* 2. No person, corporation or company shall transport or convey beyond the limits of this state any woodcock, ruffled grouse or quail killed within this state, or sell or have in his or their possession any of such birds with the intention to procure the same to be conveyed or transported beyond the limits of this state.

" *Sect.* 3. The reception by any person, company or corporation within the limits of this state, of any quail, woodcock or ruffled grouse, for shipment to a point without the state, shall be *primâ facie* evidence that said bird or birds were killed within the state for the purpose of carrying the same beyond the limits of this state.

" *Sect.* 4. Any person violating any of the provisions of the preceding sections shall be fined not less than seven nor more than fifty dollars and costs of prosecution." Public Acts of 1882, ch. 102.

It is evident that under the act as originally passed the complaint would have been good and sufficient. But it is claimed by the defendant that, under the act as revised, no offense is committed unless the birds, by him held for transportation, were killed for the purpose of being conveyed beyond the limits of the state.

He says that the word " such," in the provision of section 2546 against transporting, or having in possession with intent to procure their transportation beyond said limits, any of such birds killed within the state, means woodcock, ruffled grouse or quail killed for the purpose of conveying the same beyond the limits of the state.

As already suggested, that construction involves a change in the law from the original act, which expressly forbade any person to have in his possession with the intention to procure the same to be transported beyond the limits of the state, any woodcock, ruffled grouse or quail killed within the state.

It seems to us evident also upon the face of the statute as revised, that the word " such " was used only to obviate the necessity of repeating the words " woodcock, ruffled grouse or quail," and that to carry its force and operation further, so as to include the purpose for which they were killed, would not only be unnatural, but dangerous as a precedent for construction in view of the terms of the old statute. We cannot believe that careful revisers would have undertaken to change the law without some more definite indication of such purpose.

Then again, when the words "such birds " are used in the very next line of the section, it is evident that they are used to take the place only of the words " woodcock, ruffled grouse or quail;" as if it read "the reception by any person within .the state of any. woodcock, ruffled grouse or quail, for shipment to a point without this state, shall be *primâ facie* evi-

dence that said bird or birds were killed within this state for the purpose of conveying the same beyond its limits." Otherwise we should have the absurd provision that "the reception by any person within the state, for shipment to a point without the state, of any woodcock, ruffled grouse or quail, killed for the purpose of conveying the same beyond the limits of the state, shall be *primâ facie* evidence that such birds were killed within the state for the purpose of conveying the same beyond its limits." That is, the fact that they were killed for transportation shall be *primâ facie* evidence that they were killed for transportation. The word "such" in both sentences refers to the same antecedent.

It is plain enough that the revisers intended not to change, but to condense, the sections of the original statute, and the language should be construed in the light of such intention. We conclude therefore that the complaint is sufficient.

We see nothing in the decision in *Commonwealth* v. *Hall,* 128 Mass., 410, to which the defendant refers us, inconsistent with our conclusion. The object of the act therein involved was to protect the game in that commonwealth and not in another. And a construction confining its force to birds killed therein was to be expected in the absence of controlling words to the contrary. All the reasoning in that case may certainly be held sound without impugning the reasoning upon which we arrive at our conclusion in this.

But in this view of the matter another question arises. The defendant further demurred to the complaint—" (3) Because section 2546 of the General Statutes is unconstitutional and void, so far as it may be construed to forbid the transporting from the state, or having possession with intent to procure such transportation to another state, birds described therein, which birds have been sold to parties in such other state, and have begun to move as an article of interstate commerce. And, (4) because it is made to appear in said complaint that the defendant is guilty under said section if such birds were bought by the defendant in the markets of this state as merchandise and commerce and had begun to move as an article of commerce."

In short, the defendant insists that the statute, as con-strued by us, is unconstitutional as restricting interstate commerce, and refers to *Robbins* v. *Shelby County Taxing District*, 120 U. S. R., 489; *The Daniel Ball* v. *U. States*, 10 Wall., 557; *Hannibal & St. Joseph R. R. Co.* v. *Husen*, 95 U. S. R., 465; *State* v. *Saunders*, 19 Kan., 127; *Territory* v. *Evans*, 23 Pacific Reporter, 115; *Territory* v. *Nelson*, id., 116; *State ex rel. Corwin* v. *Ind. & Ohio Oil Gas & Mining Co.*, 22 North Eastern Reporter, 778; *American Express Co.* v. *The People*, 24 id., 759.

In *State* v. *Saunders, supra,* the court says it seems to be finally settled, among other things, that no state can pass a law which will directly interfere with the free transportation from one state to another, or through a state, of anything which is or may be a subject of interstate commerce. That a law which prohibits the catching and killing of prairie chick-ens may be valid, although it may indirectly prevent the transportation of such chickens from the state to any other state; but that a law which allows prairie chickens to be caught and killed and thereby to become the subject of traf-fic and commerce, and, at the same time, directly prohibits their transportation from the state, is unconstitutional and void.

Without stopping to consider the construction which was given to the constitutional provision under discussion by the earlier commentators, except to suggest, in the language of Judge STORY, (2 Story's Com. on the Constitution, 511,) that a very material object of its adoption was the relief of the states which export and import through other states, from the levy of improper contributions on them by the latter, an object which was shown to be important by the experience of the states during the confederation period, we feel constrained ·to hold the provision of the statute to be constitutional.

It being conceded that the state, under its general police power, may lawfully prohibit the killing of the game birds in question, it may, of course, control such killing and the times and purposes thereof. It may lawfully enact that they may be killed and sold and held for sale only for domestic.

consumption.  The state in the exercise of its power, instead of prohibiting the killing altogether, permits the person killing them to acquire only a qualified right in them, namely, the right to appropriate them to his own use, and the right to sell or transport them for domestic use.

The birds in question never became articles of commerce within the meaning of the term contended for by the defendant.  They became private property of a qualified character. The law limited the purposes for which they might be killed and become private property.  The difference between property of this sort and the ordinary private property of commerce is obvious.

The apparent assumption of the Kansas court, above referred to, that game which the law allows to be caught and killed, thereby necessarily becomes the subject of traffic and commerce, meaning interstate commerce, appears to us unsound.  If the proposition were true then the conclusion that a state law interfering with such commerce would be unconstitutional might pass unquestioned.  But we cannot acquiesce in a decision which would deny the power of the state to limit the right to kill, sell and hold its own game by any provision short of an absolute prohibition, without thereby transforming it into that species of property the transportation of which from the state it is unconstitutional to prohibit.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.