---

VOGEL & BINDER CO. v. CHARLES P. EVANS CO. et al.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1909.)

1. MECHANICS' LIENS (§ 137*)—NOTICE OF LIEN—"OWNER."

A grantee in possession under an unrecorded deed is the "owner" within Lien Law (Laws 1897, pp. 515, 518, c. 418) §§ 2, 9, providing that notice of lien shall state the name of the owner of the property, defined to include the owner in fee or of a less estate therein, etc.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 225–233; Dec. Dig. § 137.*]

2. MECHANICS' LIENS (§ 195*)—PRIORITIES.

Lien Law (Laws 1897, p. 520, c. 418) art. 1, § 13, providing that a lien for materials or labor in the improvement of realty shall have priority over a conveyance, judgment, or other claim not recorded, docketed, or filed, etc., does not determine the priorities between liens based on notices of lien stating as the owner the grantee in possession claiming under an unrecorded deed and liens based on notices stating as owner the grantee in the recorded deed under whose deed the party in possession claimed, and the name of the grantee in possession and their priorities depend on the time of the filing of the various notices.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 195.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Monroe County.

Action by the Vogel & Binder Company against the Charles P. Evans Company and others. From a judgment for plaintiff and for certain of the defendants, the Palmer Lumber Company and another appeal. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

W. C. Carroll (George Y. Webster and James L. Whitely, on the brief), for appellants.

C. C. Werner, for respondent Vogel & Binder Co.

Hiram R. Wood, for respondent Weaver, Palmer & Richmond.

Frederick M. Whitney, for respondent Charles P. Evans Co.

Albert H. Stearns, for respondent Beiter Paint Co.

ROBSON, J.  The decision of this controversy requires a determination of the validity and priority of certain mechanics' liens filed by appellants and respondents against real property in the city of Rochester.  The facts in the case are disclosed by evidence suggesting little, if any, direct conflict.  While in some important particulars we have reached conclusions as to what the facts established by the evidence are different from those arrived at by the learned trial court, yet that result is due largely to our having drawn different inferences of fact from uncontradicted testimony.  A recital of the facts which we deem the evidence establishes will aid in stating the reasons for our conclusions that the judgment should be reversed.  The defendant Genesee Amusement Company is a corporation organized prior to July 23, 1907, at which time it entered into a written contract with the defendants Montgomery for the construction at an agreed price of a building upon the premises in question.  At this time the title to the premises was owned by one Kimball, and Charles A. Drake had an option contract to purchase the same, obtained by him before the formation of the Genesee Amusement Company, of which company he became the president.  Work was begun by the Montgomerys under their contract with the amusement company; and had substantially progressed prior to December, 1907.  What the exact arrangement was between Drake, the holder of the option, and the amusement company, does not appear; but it is apparent that it was understood that the company had succeeded to his rights, and that the company was erecting the building on the premises in its own interest.  Prior to December, 1907, the amusement company had applied to one of the Rochester savings banks for a loan upon the property.  This bank, as a condition of making the loan, required, under its rules for making loans, that the directors of a corporation to which it loaned money upon a mortgage of real estate must personally sign the bond accompanying the mortgage.  At least one of these directors was unwilling to do this.  To obviate this difficulty, it was then arranged, satisfactorily to the bank, that title to the premises should be taken in the names of two persons, Harris and Hooker, who should thereupon give a mortgage thereon with their bond accompanying it.  Pursuant to this arrangement on December 11, 1907, Kimball gave a deed of the premises to Harris and Hooker.  Harris and Hooker gave to the savings bank a mortgage on the premises accompanied by their bond for $60,000, and a second mortgage to Kimball for $36,000, apparently to secure the part of the purchase price unpaid.  At the same time and as part of the same transaction, Harris and Hooker conveyed the premises by their deed to the amusement company subject to the lien of the two mortgages, which the amusement company assumed.  At the same time Harris and Hooker gave an order to pay over to the amusement company the proceeds of the bank mortgage.  Harris and Hooker never had any real or valuable interest in the premises, except for the purposes above indicated, never paid any amount upon the purchase price thereof, and were not entitled to and did not receive the proceeds of the mortgage, and were not interested in any contracts for building upon or improving the premises.  As a part of

the consideration for the transfer of the premises by Kimball, the amusement company paid him about $5,000. Harris and Hooker were also paid for their services. The deed to Harris and Hooker was duly recorded on the following day, as were also the two mortgages they had given. The deed from Harris and Hooker to the amusement company was retained by the attorney, who was also one of the directors of the company until May 12, 1908; but satisfactory reasons why the same was not recorded appear, and we cannot find any improper or unlawful purpose that could be or was served by delay in the record of it. From the time the Harris and Hooker deed was delivered to the amusement company down, at least, to a time subsequent to the filing of the liens, hereinafter referred to, it was in open and recognized possession of the premises claiming title under its deed, and Harris and Hooker did not in any way have or claim possession thereof or title thereto. The amusement company paid the Montgomerys at various times during the progress of construction of the building, pursuant to the building contract, considerable sums to apply thereon, both before and after the deed to it was given. After the completion of the work, there remained due on the contract $8,074.28, and the sole controversy is as to which of two classes of lienors shall get this fund. These lienors are materialmen who furnished material used in erecting the building on the premises under contracts they had with the Montgomerys. It is conceded that the amounts set forth in the respective liens were actually due to the respective lienors for services performed for and materials furnished to the Montgomerys, and that the liens were filed within 90 days of the furnishing of the last items of materials. The amounts of these liens, the names of the claimants, and the respective dates of filing thereof, are as follows:

(1) Palmer Lumber Company (appellant) March 20, 1908, 9:27 a. m... $2,272 76
(2) Becker Glass & Paint Co. (appellant) March 23, 1908, 9:06 a. m. . 1,255 62
(3) Weaver, Palmer & Richmond (respondent) March 23, 1908, 4:58 p. m.. ........................................................... 1,750 00
(4) Warren Chemical & Manufacturing Company (respondent) March 24, 1908, 11:10 a. m.......................................... 1,123 57
(5) Charles P. Evans Company (respondent) March 24, 1908, 12:40 p. m...................................................... 2,415 15
(6) Beiter Paint Company (respondent) March 28, 1908, 11:59 a. m.. 62 99
(7) Vogel & Binder Co. (plaintiff-respondent) March 28, 1908, 12:00 m......................................................... 1,670 34
(8) Warren Chemical & Manufacturing Co. (respondent) April 20, 1908, 11:17 a. m........................................... 1,123 57

The lien of Weaver, Palmer, & Richmond, No. 3 above, consists of an order drawn by the Montgomerys against the owner, Genesee Amusement Company, directing the payment of the sum of $1,750 out of the fund and duly accepted in writing by the Genesee Amusement Company. No question seems to be made either by appellants or respondents that this was properly allowed by the trial court as a lien upon the premises. In liens Nos. 1, 2, and 4 the Genesee Amusement Company alone is named as owner. In lien No. 5 Harris and Hooker and Genesee Amusement Company are named as owners, and their respective interests in the premises are stated to be as to

Harris and Hooker ownership in fee simple by deed to them recorded on or about December 12, 1907, and by them deeded to Genesee Amusement Company by unrecorded deed. Nos. 6 and 8 contain similar statements as to ownership. No. 7 names Harris and Hooker as owners and Genesee Amusement Company as a person in interest, the exact nature of which is unknown. Lien No. 8 represents the same claim, and is for the same amount as lien No. 4. For some time prior to the date of filing the first lien, and continuously thereafter, the Genesee Amusement Company had been using a considerable portion of the building, then approaching completion by the contractors, for the purposes of its business. Financial difficulties overtook the contractors, and they were adjudged bankrupts before their contract was entirely finished. By agreement of all parties the building was completed by the defendant Evans, who under the agreement was to be first paid from the unpaid balance due from the amusement company on completion of the contract the expense thus incurred, which it is conceded is $943.76.

The trial court has found and the judgment as entered determines that appellants' liens, Nos. 1 and 2 above, as well as the first lien of the Warren Chemical & Manufacturing Company, No. 4 above, are invalid and void, and it further directs their cancellation and annulment of record. It is further found and determined that the other liens are valid, and appropriate direction is given for their enforcement and payment. Appellants do not assail the validity of the other liens; but do insist that their liens are valid, and, having been filed first in time, are superior in right to those of the other lienors.

There can be little doubt that the appellants had the right to file their notices of lien directed to the Genesee Amusement Company as owner, and that the lien attached to such interest as the company had as an owner, whatever that might be, except as their right to such lien may be modified by section 13 of the mechanic's lien law, to which reference will be made hereafter. Strauchen v. Pace, 195 N. Y. 167, 170, 88 N. E. 51. In this case the court in discussing the effect and application of sections 2 and 9 of this law clearly states that a failure to name the true owner in the notice of lien and assert a claim against him eo nomine does not impair the effect of the notice for the purpose of impressing a lien upon whatever interest the party named in and against whose interest a lien is therein stated to be claimed may have, provided only that interest is one of those specified in section 2 of the act. The amusement company was in possession of the premises with the title thereto under its unrecorded deed. Actual possession of real estate "is notice to all the world of the existence of any right which the person in possession is able to establish," and it does not seem material for the purpose of charging every one with such notice that such rights or even the fact of possession were unknown to the person to be charged with such notice. Phelan v. Brady, 119 N. Y. 587, 23 N. E. 1109, 8 L. R. A. 211; Marden v. Dorthy, 160 N. Y. 39, 52, 54 N. E. 726, 46 L. R. A. 694; Shneider v. Mahl, 84 App. Div. 1, 5, 82 N. Y. Supp. 27. The amusement company, being in possession of the premises claiming under a valid conveyance of title, was not only an "owner" within the definition of an "owner"

in section 2 of the statute, but was, in fact, the owner of the premises. It follows that appellants' liens attached to that interest at least; and the finding of the trial court that these liens were invalid and void for any purpose was erroneous.

Respondents, however, insist that their liens have by express provision of the statute priority over appellants' claims. The statutory provision to which we are referred as sustaining this claim is found in section 13 of article 1 of the lien law (Laws 1897, p. 520, c. 418);, which provides that:

"A lien for materials furnished or labor performed in the improvement of real property shall have priority over a conveyance, judgment, or other claim against such property not recorded, docketed or filed at the time of filing the notice of such lien."

We are not assisted in applying this provision of the statute to a determination of the rights of the several parties in this action by any direct authority construing it, to which our attention has been directed. It would seem that the underlying purpose of this provision was to relieve the lienor from the possible result of having his lien, otherwise perfect, as a claim upon the real estate it describes, made ineffectual by some secret transfer, or other incumbrance, upon the property, which was asserted to prevent the lien's attaching to the property, or reducing its value, or extent. It should be borne in mind that appellants' liens attached to the interest of the Genesee Amusement Company in the property, whose title was as to "all the world" that of· an owner of the fee. Record of its deed was not necessary for the purpose of giving notice as to it of the title it claimed and had. Appellants' liens attached to that title. Their liens were duly filed. It is only as to conveyances, judgments, or other claims, not recorded, docketed, or filed, that the statute in terms applies to subordinate them to subsequent liens properly filed against the property. Any purchaser or mortgagor of the premises taking title from the amusement company would be bound by these notices of lien. We think the same reason applies for holding the respondents bound to recognize appellants' liens, not only as prior in time, but prior in right. To adopt respondents' construction of the statute would lead to results which we cannot believe it should be held the statute permits. For instance, if appellants' position is correct, all of these lienors might have filed their claims against Harris and Hooker alone. The Genesee Amusement Company, the real owner, with whom alone the contract for the erection of the building was made, not having notice of the liens, might have paid to the contractors the full contract price for the building, and then be required to pay in addition the full amount of the liens. We cannot accept a construction of the statute which necessarily permits such a possibility.

Judgment reversed on the law and facts, and a new trial granted, with costs to the appellants to abide the event. All concur, except McLENNAN, P. J., who dissents upon the ground that the word "owner," as used in the statute, means the owner as disclosed by record, and that a lien filed against such owner is superior to one filed against the owner under an unrecorded deed.