WESTERN SASH, DOOR & LUMBER CO. v. GAUL CONST. CO. et al.

(Kings County Court, at Chambers. October 18, 1910.)

1. APPEAL AND ERROR (§ 220*)—PRESENTATION OF QUESTIONS BELOW—REPORT OF REFEREE—REQUISITES.

The report of a referee need not for purposes of appeal include findings made by him at the request of a party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1325; Dec. Dig. § 220.*]

2. MECHANICS' LIENS (§ 285*)—REFERENCE—RECOMMITTAL—GROUNDS.

Where, in a suit to foreclose a mechanic's lien, plaintiff conceded before the referee that the amount due a lien claimant was a specified sum, he was not entitled to a rereference on the ground that an inspection of the buildings made since the report of the referee showed that the amount claimed by the lien claimant was excessive for the work done and materials furnished, in the absence of any excuse as to why the discovery was not made before the close of the hearing, because the evidence was available at the time of the hearing.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 576; Dec. Dig. § 285.*]

3. MECHANICS' LIENS (§ 26*)—"CONTRACT FOR IMPROVEMENT OF REAL ESTATE" —STATUTES—"CONTRACTOR"—"MATERIALMAN"—"IMPROVEMENT."

Under Lien Law (Consol. Laws, c. 33) § 2, defining a contractor as one entering into a contract with the owner of real property for the improvement thereof, and defining a materialman as any person other than the contractor furnishing materials for such improvement, and defining the term "improvement" as including the erection, alteration, or repair of any structure on real estate, and any work done on the property or materials furnished for its improvement, a contract requiring one to furnish all the window frames, sash, glass, and trim in and to buildings in course of construction for a lump sum, payable in installments as the work progressed, and requiring him to make a large part of the materials according to plans, is a contract for the permanent improvement of real estate within the lien law, and he is entitled to a lien for the materials furnished and work done.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 27–29; Dec. Dig. § 26.*

For other definitions, see Words and Phrases, vol. 2, pp. 1513–1530; vol. 8, pp. 7615–7616; vol. 2, pp. 1534–1537; vol. 8, p. 7616; vol. 4, pp. 3454–3459; vol. 8, pp. 7682–7683; vol. 5, p. 4409; vol. 8, p. 7718.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** MECHANICS' LIENS (§ 195*)—PRIORITY.

The order of filing liens under the lien law (Consol. Laws, c. 33) governs in determining the priority between lien claimants.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 336; Dec. Dig. § 195.*]

Action by the Western Sash, Door & Lumber Company against the Gaul Construction Company and another.  Judgment ordered.

The following is the opinion of Forrest S. Chilton, referee:

This is a reference to determine the priority of mechanics' liens between plaintiff and defendant Shelvin Contracting Company. The property has been sold for less than $2,000, pursuant to judgment in this action. Plaintiff has a valid lien for $2,000 for trim and window frames, sash, and glass, and casings and moldings. The Shelvin Contracting Company has a valid lien for $860 for plumbing materials and the labor installing the same. Shelvin Contracting Company filed its lien first. Plaintiff claims priority as a materialman over the Shelvin Contracting Company as a contractor, under section 56 of the lien law (Consol. Laws, c. 33). The Shelvin Contracting Company's materials and labor were furnished and performed pursuant to an oral contract with the owner to furnish the same in accordance with a model house inspected. Plaintiff's materials were furnished by it as assignee of and pursuant to a written contract between its assignors, Berman & Jacobs, contractors, and the Gaul Construction Company, the owner. Disregarding the contradictions in the contract attributable to the using of a printed form and to negligence in its preparation, and interpreting it in the light of its subsequent performance, the clauses material here are:

"The contractor (Berman & Jacobs) shall and will provide all the materials and furnish all the window frames, sash, glass and trim in and to premises consisting of five buildings now in course of construction, situate on the northerly side of 73rd street, two hundred and twenty (220) feet northwesterly of Eleventh Ave., borough of Brooklyn, N. Y. City, according to plans and specifications, excepting in the following instances: Pannels and wainscotting in vestibules to be 5 feet high, one dresser in each apartment, collumns and grills in openings, between parlors and dinning rooms. Base for parlor and dinning rooms to be 14 inches high and made in three members. Dinning rooms to have Dutch pannels and strips. Above all doors and windows there is to be cap and head."

"It is hereby mutually agreed between the parties hereto that that sum to be paid by the owner to the contractor for said materials shall be the sum of thirty-two hundred ($3200) dollars, subject to additions and deductions as hereinafter provided, and such sums shall be paid by the owner to the contractor in current funds and only upon certificate of the architect as follows:

" $150 when all the window frames are delivered and buildings are enclosed.

"$1,000 when the standing trim is set and sash is hung.

"$1,000 when closets, doors and dressers are set and hung and when all the work and materials under this contract is entirely complete except the vestibules.

"$1,050 being $525 in cash and $525 in a 60 days note when the buildings are completed."

From the whole contract and from the manner it was performed it is clear that plaintiff assignor did not agree to install the material. The question is therefore squarely presented as to whether or not this fact ipso facto makes plaintiff a materialman. Section 56 of the lien law clearly prefers the claim of a materialman over a contractor. But what is a materialman and what is a contractor within the meaning of lien law. The lien law (section 2) provides: "The term 'contractor' when used in this chapter means a person who enters into a contract with the owner of real property for the improvement thereof." "The term 'materialman' when used in this chapter means any

---

person, other than a contractor, who furnished materials for such improvement." If the word "improvement" as used in the definition of contractor is to be taken only in its natural and logical meaning, no contract to furnish materials without an agreement to install them would constitute a contract for improvement, and make the party who agreed to furnish the same a contractor within the meaning of the lien law. Materials delivered would not improve the premises. That would require their actual installment. To cover the land up with the loose materials admittedly could not permanently improve the premises as one would understand that expression—i. e., the statute did not define "improvement." However, the word "improvement," as used in the lien law, has an additional and special meaning by force of the special definition in section 2 of the lien law, which provides: "Improvement: The term 'improvement' when used in this chapter, includes the erection, alteration or repair of any structure upon, connected with, or beneath the surface of, any real property and any work done upon such property, or materials furnished for its permanent improvement." The phrase "or materials furnished for its permanent improvement" cannot be ignored. It plainly says "improvement" when used in this chapter includes materials furnished for permanent improvement. In this special meaning installing by the party furnishing is not essential. The material having been actually used in the structures, the party who simply furnished it has within this special meaning improved the property. A contract with an owner to furnish materials to be used in constructing structures on the owner's premises must either be a simple contract of sale and delivery or a contract for the improvement of the premises. Of course, if the contract contained an agreement by the contractor to install his materials, that would be a contract to improve within the natural as well as the statutory meaning of that word. If the contract does not contain an agreement by the contractor to install his materials, then it might be either a contract for sale and delivery or a contract for improvement with the statutory meaning of "improvement," although not within its natural meaning.

Let us now see whether the contract in question is a contract for sale and delivery or a contract for improvement within this special meaning of "improvement." In substance, it provides that plaintiff's assignor should furnish all the window frames, sash, glass, and trim "in and to" premises consisting of five buildings then in course of construction for the lump sum of $3,200, payable in definite installments as the work progressed. A large part of these materials had to be specially made up for this particular set of buildings. Everything was to be according to plans and specifications except certain definite changes. The contractor had to furnish all the materials needed to complete the buildings. If the owner had used any of the materials so furnished and delivered for any purpose other than in the construction of these houses, it would have been conversion by him of materials belonging to plaintiff. After materials had been delivered, but before they were installed, plaintiff could have taken them away. The owner could not object. Plaintiff was simply to furnish sufficient material when required. If he delivered an excess, it was still his, and he could take it away. Until installment fire losses would be on the plaintiff. I cannot see the first element of sale and delivery here. It is clearly a contract for the improvement of real property within the meaning of the lien law.

The foregoing views are consistent with Herrmann & Grace v. City of New York, 130 App. Div. 531, 114 N. Y. Supp. 1107, and Hedden Construction Company v. Proctor & Gamble Co., 62 Misc. Rep. 129, 114 N. Y. Supp. 1103. They do not conflict with Jackson v. Egan, 138 App. Div. 505, 123 N. Y. Supp. 297, as I understand that case. In the Jackson Case the court said: "If the person who furnishes material also agrees with the owner of the real property to use that particular material in the erection of any structure upon it, he ceases to be simply a materialman, and becomes a contractor. We do not claim that this exhaustively points out the difference between these two classes, but it is sufficient for the purpose of this case."

Of course, as said before, a contract to furnish and install particular material would be a contract to improve even within the natural and logical meaning of "improvement" without any reference to its statutorily extended or additional meaning. But that case does not decide that "improvement"

has no such additional signification, nor that under all circumstances a contract with the owner to furnish materials must contain an agreement by the contractor to use that particular material in the erection of some structures upon the premises before it can become a contract within the special meaning of the lien law. Such is not the law, and the Appellate Division did not so decide. They decided in effect that De Long's contract did not involve an agreement to improve, but simply a contract for sale and delivery. That case is close to the case in hand, but I do not consider it controlling. This view allows a decision in accordance with the justice of the case. Both parties are contractors within the lien law. The order of filing must govern. Shelvin Contracting Company's claim of $860 has priority over claim of plaintiff.

Edward Snyder, for plaintiff.
Van Mater Stilwell, for defendants.

FAWCETT, J.   Plaintiff entered by default a judgment foreclosing its lien for the sum of $2,000. Defendant Shelvin Contracting Company moved to open its default and be permitted to establish its lien and its priority. The judgment was allowed to stand and the sale proceed, the rights as between plaintiff and the Shelvin Contracting Company being reserved and referred.

The referee reported that the Shelvin Contracting Company had a valid lien for $860 entitled to priority over that of the plaintiff. The order of reference was made August 2, 1910. The reference continued to August 20, 1910. During the trial plaintiff conceded that the amount due and unpaid to the Shelvin Contracting Company on its mechanic's lien was the sum of $860. Witness Shelvin testified to the same thing. In its proposed findings plaintiff requested the referee to find and the referee found:

"That said Shelvin Contracting Company actually did work for and furnished materials for said buildings of the amount of eight hundred and sixty ($860) dollars."

The referee also made certain findings at the request of the plaintiff, which are not included in the formal report. Plaintiff contends that it is necessary for the purpose of appeal that the findings found at its request be included in the report. Such is not the law. See Brenner v. Man. Ry., 191 N. Y. 333, 84 N. E. 59; Elterman v. Hyman, 192 N. Y. 113, 84 N. E. 937, 127 Am. St. Rep. 862. Plaintiff further contends that an inspection of the buildings made since the report of the referee shows that $860 is an excessive figure for the work and the material of the Shelvin Contracting Company, and that as to this item the matter should be re-referred. No excuse is offered as to why this discovery was not made before the close of the hearing. It is not new evidence. The evidence was completely available at the time of hearing. Due and orderly practice requires that this matter be not reopened. The question of law as to the priority of the liens is of great practical importance. As to that question this court agrees with and adopts the opinion of the referee as its opinion.

Motion to vacate denied. The report in all respects confirmed and the findings of fact contained in plaintiff's proposed findings confirmed. Judgment entered accordingly.