Hartford Builders Finish Co. *v.* Anderson.

------

THE HARTFORD BUILDERS FINISH COMPANY, INC. *vs.*
J. ALFRED ANDERSON ET ALS.

First Judicial District, Hartford, May Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Under our mechanics-lien law (§ 5217), the claims of original contractors are payable in the order of their priority, that is, in the order of the commencement of the services rendered or of the materials furnished by each; while the claims of subcontractors under one general contractor (§ 5220) are subject to apportionment in case the amount available is insufficient to pay them all.

The history and development of our lien-law statutes reviewed.

Revisers are not presumed to change the law.

Argued May 2d—decided July 27th, 1923.

SUIT to foreclose a mechanic's lien, brought to and tried by the Superior Court in Hartford County, *Haines, J.;* the court, upon written stipulation of the parties, ordered a sale of the property, the payment of the proceeds into court, and thereafter adjudged that such proceeds, being insufficient to pay all claims in full, should be divided among the lienors in proportion to the amount of their respective claims, without regard to their priority in point of time, and from this judgment the defendant Capitol City Lumber Company appealed. *Error and cause remanded.*

*Stewart N. Dunning,* for the appellant (defendant Capitol City Lumber Company).

*Birdsey E. Case,* for the appellees (defendant Ekstrom *et al.*).

*Thomas J. Conroy,* for the appellees (defendant Grant *et al.*).

*Terry J. Chapin, Milton Bacharach* and *William H. Fogerty,* also appeared on the brief for other appellees.

KEELER, J. From the finding of facts it appears that the plaintiff and all of the defendants (except Anderson and Larson) furnished materials and rendered services in the construction of a dwelling-house for Anderson and Larson upon a lot of land in West Hartford owned by them, and that the plaintiff and all of the other defendants filed mechanics' liens against the real property; and that the commencement of each lien was the date of the beginning of rendering services or furnishing materials. Each of the lienors was an original contractor with the owners, and there were no other general contractors. The property was sold by judg-

ment of the court for $5,150, and a net sum of $4,855.26 remained for distribution among the lienors after payment of costs and expenses of sale. The aggregate amount due to all the lienors was $6,471.84. The court in its judgment ordered the sum remaining for distribution to be paid and apportioned pro rata among the lienors, and overruled the claim of the appellant that they should be paid in the order of precedence and priority of their incumbrances according to the dates of commencement of the various liens, from which judgment the appellant appealed, assigning the application of the rule of division adopted by the court as error.

Very little in the way of uniform doctrine can be derived from the construction which has been placed upon statutes of the different States relating to mechanics' liens, by reason of the diversity of the terms employed. Some of them settle the question involved in the instant case by express provisions as to priority, others have more general provisions. These latter may be said to fall into two classes: in one, all liens attach from the commencement of the building; in the other, liens attach from the commencement of work or of furnishing materials. As to the former class it has been generally held that lienors prorate their claims and that among them there is no priority. In considering statutes falling in the second class, the construction has ordinarily been that priority exists, and that, as among themselves, lienors are preferred in the order of time at which they severally commenced to render services or furnish materials. The Connecticut statute is included in the second class above defined. The diligence of counsel and investigation by the court has failed to find more than two cases, *Choteau, Merle & Sandford* v. *Thompson & Campbell*, 2 Ohio St. 114, and *Crowell* v. *Gilmore*,

18 Cal. 370, in which, under a statute falling in the second class, it has been held that the principle of a pro rata division applies and not that of priority. It is also doubtful whether the California statute comes clearly within the second class.

In *Kendall* v. *Pickard*, 67 N. H. 470, 32 Atl. 763, the court—construing the statute of New Hampshire, P. S. Ch. 141, § 16, which provides that a contractor's lien "shall continue for ninety days after the services are performed, or the materials or supplies are furnished, unless payment therefor is previously made, and shall take precedence of all prior [*sic*] claims except liens on account of taxes,"—says: "It is difficult to express in fewer or more explicit words . . . that liens of the kind in question have precedence in the order of their accrual, and, if they accrue simultaneously, in the order of the attachments made to secure them."

The statute of New York relating to mechanic's liens (N. Y. Consol. Laws, 1st. Ed., Vol. 3, Chap. 38, Art. 2, § 3, p. 3140), provided the contractors should have a lien on the property improved or to be improved and upon the improvement, from the time of filing a notice of such lien. The Act has been construed to give priority to lienors according to the dates of filing their respective liens. *Hall* v. *Thomas*, 110 N. Y. Supp. 979; *Western Sash, D. & L. Co.* v. *Gaul Const. Co.*, 126 N. Y. Supp. 1110; *Vogel & Binder Co.* v. *Montgomery*, 133 N. Y. App. Div. 836, 118 N. Y. Supp. 10; *Kelley Lumber Co.* v. *Otselic Valley R. Co.*, 136 N. Y. App. Div. 146, 120 N. Y. Supp. 415.

Passing to a review of our own statutes concerning mechanics' liens, and decisions applicable to the question under consideration, we find that the first statute upon the subject was enacted in 1836, Public Acts of 1836, Chap. 76; and § 1 subjects a building

and the land whereon it is placed, in any incorporated city, to a lien in favor of a contractor whose claim for services performed or materials furnished in the erection or repair of such building shall exceed $200, and provides that the sum due "shall be a lien on such land and building, and shall take precedence of any other lien or incumbrance, which originated subsequent to the commencement of such building or repairs, and such premises shall be liable to be foreclosed by such contractor or contractors, in the same manner as if held by mortgage."

In 1838 the statute was amended to include buildings located anywhere in the State, and in 1839 a right of lien was extended to subcontractors. In 1855 (Public Acts of 1855, Chap. 76) there was added to § 1 of the law of 1836 above cited, the words: "subject to apportionment as provided in the fifth section of this Act." This fifth section is substantially what we now have in General Statutes, § 5220, relating to liens of subcontractors.

Various changes were made from time to time in the provision of the lien law, but none affecting the question now under consideration until the Revision of 1875, when the words of § 1 of the Act of 1836 were changed by striking out the word "lien," so that the section as revised, reads: "and shall take precedence of any other incumbrance originating after the commencement" etc. No substantial change in this section was made in subsequent Revisions, and it now appears in General Statutes, § 5217. Both of these sections are printed in the foot-note.

Sec. 5217. MECHANIC'S LIEN ON BUILDINGS AND LAND. PRECEDENCE. If any person shall have a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building, or any of its appurtenances, and such claim shall be by virtue of an agreement with or by consent of the owner of

As we have stated, appellant claims precedence and priority for the various liens according to the time in which each accrued. The appellees claim an apportionment of the available fund pro rata in accordance with the amounts of their several claims, and in support of this contention advance the following reasons: First, that the rule of equity is equality, and that in default of an express provision in unmis-

the land upon which such building is erected or has been moved, or of some person having authority from or rightfully acting for such owner in procuring such labor or materials, such building with the land on which it stands shall be subject to the payment of such claim. Such claim shall be a lien on such land, building and appurtenances, and shall take precedence of any other incumbrance originating after the commencement of such services, or the furnishing of any such materials, subject to apportionment as provided in section 5220, but in case of removal no such lien shall take precedence of any incumbrance upon the land to which the building is removed which accrues before the building has been actually moved upon the land. Said premises may be foreclosed by the owner of such claim in the same manner as if held by mortgage.

Sec. 5220. LIENS LIMITED; APPORTIONMENT; PAYMENTS TO ORIGINAL CONTRACTOR. No such lien shall attach to any building or its appurtenances, or to the land on which the same may stand, in favor of any person, to a greater amount in the whole than the price which the owner agreed to pay for such building and its appurtenances; and when there shall be several claimants, and the amount of their united claims shall exceed such price, the claimants, other than the original contractor, shall be first paid in full, if the amount of such price is sufficient for that purpose; but if not, it shall be apportioned among the claimants having such liens, other than the original contractor, in proportion to the amount of the debts due them respectively; and the court having jurisdiction thereof, on application of any person interested, may direct the manner in which such claims shall be paid; but in determining the amount to which any lien or liens shall attach upon any land or building, the owner of such land or building shall be allowed whatever payments he shall have made, in good faith, to the original contractor or contractors, before receiving notice of such lien or liens. No payments made in advance of the time stipulated in the original contract shall be considered as made in good faith, unless notice of intention to make such payment shall have been given in writing to each person known to have furnished materials or rendered services at least five days before such payment is made.

takable terms giving priority, this rule should have
effect in construing the statute considered. This
is the ground of decision adopted by the court, as
appears from its memorandum, wherein it is said:
"This statute says nothing as to priorities or pro rating,
but we think the spirit and intent of the statute,
the mischief which it was designed to remedy, and
the application of equitable principles, all require
that the statute be construed as giving an interest to
each lienor in proportion to his claims." This ground
is also adopted in the two cases favorable to the conten-
tion of the appellees before referred to, *Choteau, Merle
& Sandford* v. *Thompson & Campbell,* 2 Ohio St. 114,
and *Crowell* v. *Gilmore,* 18 Cal. 370. Second, that the
precedence spoken of in § 5217 means priority not of
one lien over another, but of the various liens in the
aggregate over other incumbrances. Third, that the
removal of the word "lien" from the section in the
Revision of 1875, now General Statutes, § 5217, served
to remove any possibility of any construction giving
priority as between lienors. Fourth, that the phrase
contained in § 5217, "subject to apportionment as
provided in section 5220," relates to all liens, and that
§ 5220 is referred to as providing a method of ap-
portionment. The three grounds last named were
not passed upon in the memorandum of the trial
court, and do not appear to have been taken by it
as reasons of decision.

Examining prior decisions of this court, we find in
the opinion in *Chapin* v. *Persse & Brooks Paper Works,*
30 Conn. 461, 474, by HINMAN, C. J., the following state-
ment: "The order in which liens take precedence, which
by the statute is to depend upon the commencement
of the services or of the furnishing of materials. . . ."
No other meaning can here be given to the word preced-
ence than that of priority, and in announcing this rule

the court was undoubtedly voicing the then-existing
rule of construction, and a rule which has certainly ac-
corded with subsequent practice at circuit and with
professional opinion.   The decision was rendered in
1862, based on the provision of the law of 1855, which
was an enactment inclusive of all then-existing law.
So far as appears by the report, there was in that case
no contest between the plaintiff and other lienors,
but in order to maintain the decision made and the
opinion rendered in the case, it was necessary to hold
as above quoted, and the statement is not *obiter*.
CHIEF JUSTICE HINMAN had before him the law of
1855, when he wrote the opinion above noted in 1862.
In order to give any force to the word "precedence,"
the appellees are forced to contend that it means
precedence in favor of the aggregate number of the
lienors, as against any other lien or incumbrance
subsequently originating, that is, that the word "lien"
as here used should be held not to include other me-
chanic's liens. If so, why was the word used at all,
what was it intended to cover, what liens on land
could be enforced at that time?   There was a tax
lien, accruing by force of the tax levy for one year
after a given tax became collectible; but it has never
been held that a mechanic's lien took precedence over
the lien for taxes, in its then-existing form, or when,
as at present, the lien can be continued after the
year by a certificate duly made and recorded.   There
was doubt about the existence of a vendor's lien,
and none had ever been enforced up to that time,
nor has one ever been since held valid so far as re-
ported cases show.   Moreover, they would in any
case have been a rarity.   So that at that time the
only liens usually so called, as distinguished from
incumbrances like mortgages and those created by
special contract, were an attachment lien and the

new form of lien for the benefit of mechanics created
by the Act itself containing the word now considered.
The conclusion is practically irresistible that the word
was intended to refer to a mechanic's lien accruing
subsequent to a prior lien of the same sort. The very
use of the word where the general term incumbrance
would have sufficed, is indicative of the correctness
of the rule just stated. Again, passing forward to the
Act of 1855 completely codifying the then-existing
law, why was it necessary to include the provision for
apportionment in the first section and a reference to
the fifth section of the law relating thereto, if liens
as among themselves had always been prorated and
so apportioned. Conceding, however, that prior to
the Revision of 1875, there might have been some
doubt as to prorating liens, the appellees say that the
revisers, with that in view and to resolve all doubt, set
the matter at rest by striking out from the section in
that Revision the word "lien." Such treatment of the
section in no way accomplishes such a result. A lien
is an incumbrance, and the intent of the revisers and
of the legislature in enacting their work into law was
simply to condense, and leave out useless and re-
dundant words. Revisers are not presumed to change
the law. This principle is very familiar: *State* v.
*Neuner*, 49 Conn. 232, 235; *State* v. *Geer*, 61 Conn. 144,
150, 22 Atl. 1012; *Westfield Cemetery Asso.* v. *Danielson*,
62 Conn. 319, 322, 26 Atl. 345. To students of the
development of our statutory law, it has always been
known that the Revision of 1875 was carefully done
and with the idea of compression. The revisers'
preface says (p. XII), we "have carefully gone over
every section of our existing laws, striking out all
unnecessary verbiage and repetitions, and condensing
every expression which we thought susceptible of it."

Passing to the last claim of the appellees, that the

words relating to apportionment deliberately incorporate in § 5217 the apportionment provided for in § 5220, as limiting the effect of the word "precedence," we would, in addition to what we have said before, now call attention to the basic error which underlies the entire contention of the appellees. It lies in this, that they fail to view the mechanics' lien law as a single enactment covering the entire subject. In view of this last fact, the view which we take of the Act is clear and apparent. Its first section (§ 5217) is concerned with liens in general and defines rights thereunder and states their order of precedence, but further on the law makes a special and different provision for subcontractors whereby they are treated differently from original lienors, and for that reason the statement of the general rights of lienors in § 5217 is properly qualified by the reference to § 5220, wherein the special and superior rights of subcontractors are defined.

Possible inequities arising from the construction which we have given the Act have been suggested; situations equally inequitable can be instanced with reference to the enforcement of the pro rata rule. This practical consideration is, however, evident, a bidding contractor knows the law, sees the plans and specifications, is thereby aware of what work comes before his own part of the job and what comes afterward. He is in a position to safeguard his interests, and he knows what chances he is taking.

There is error, the judgment is reversed and the case remanded to the Superior Court for entry of judgment in accordance with this opinion.

In this opinion the other judges concurred.