62 319
66 368
62 319
67 592
62 319
68 423
62 319
69 452
62 319
71 529
62 319
76 288
62 319
77 36

THE WESTFIELD CEMETERY ASSOCIATION *vs.* EDWARD P. DANIELSON.

Hartford Dist., Oct. T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and PRENTICE, Js.

It is provided by Gen. Statutes, § 1871, that owners of cemeteries who desire to enlarge them, may bring suits for authority to take lands for the purpose, where they " cannot otherwise acquire the title." Held to intend only a failure of the parties to agree in the matter.

A mere change in the words of a revision will not be deemed a change in the law unless it appears that such was the intention. There must be such a substantial change as to import such intention or it must be manifest from other guides of interpretation; otherwise the difference of phraseology will not be deemed expressive of a different intention.

[Argued October 4th—decided November 1st, 1892.]

SUIT to obtain authority to take certain lands of the defendant for the enlargement of a cemetery; brought to the Superior Court in Windham County. The case was referred to a committee, who reported in favor of the plaintiff, and on a remonstrance against the acceptance of the report and a motion to dismiss the complaint, the court (*Thayer, J.,*)

overruled the remonstrance and the motion, and rendered judgment for the plaintiff. The defendant appealed.

*C. E. Searls*, for the appellant.

*M. A. Shumway*, for the appellee.

TORRANCE, J. This is a proceeding brought to enlarge the limits of a public cemetery under section 1871 of the General Statutes. That section, among other things, provides that "the owner of any cemetery who wishes to enlarge its limits by adding land the title to which he cannot otherwise acquire, may prefer a complaint for liberty to take the same."

The court below found that before this proceeding was begun the plaintiff attempted in good faith to acquire by purchase from the defendant the land sought to be taken; that the parties were unable to agree upon a price for the land; that the defendant demanded for it a sum of money which was unreasonable as a price for the land or as damages for taking and using it for cemetery purposes; that the plaintiff refused to pay such price, but offered to pay what the plaintiff considered to be the full value of the land and all damages; that the defendant refused to accept anything less than the price first fixed by him; and that no further attempt was made by the plaintiff to acquire title to the land prior to bringing the present proceeding.

Upon these facts the defendant claimed that the plaintiff had failed to prove the allegation in its complaint, that it "could not otherwise acquire title to the land in question," and that consequently the court had no jurisdiction and should dismiss the complaint. The court ruled otherwise, and this ruling is the sole error assigned on this appeal.

The case turns upon the meaning of the words "the title to which he cannot otherwise acquire," in the section of the statute above quoted. The defendant contends that these words limit the plaintiff's right to take land under the statute to cases where it is, strictly speaking, impossible to ac-

quire title in any other way.  He claims that if the owner
of the land refuses to sell at any price, the land may be
taken under the statute ; but if he is willing to sell at some
price, however unreasonable, that price must be paid, and
the land cannot be taken under the statute.  If, for instance,
the owner of land reasonably worth one hundred dollars is
willing to sell it for fifty thousand dollars, and refuses to
sell for less, then, according to the claim of the defendant,
the price demanded must be paid or the Cemetery Associa-
tion cannot obtain the land at all.

We cannot assent to this claim.  The language of the
statute in itself considered is not fairly susceptible of such
a construction.  In the great majority of cases where land
is sought to be taken to enlarge a cemetery the parties will
be unable to agree about the matter.  The owner will de-
mand a price either in fact exorbitant or which the other
party deems to be so.  The owner will refuse to convey un-
less his price is paid, and the other party will refuse to pay
it.  Under such circumstances it may be fairly said that the
title cannot be acquired at all, " otherwise " than by con-
demnation proceedings.

In using the language in question we think the legislature
did not have reference to an absolute impossibility to acquire
title, but to a relative and practical impossibility arising out
of circumstances which would naturally and did ordinarily
prevent the voluntary conveyance of the title by the owner;
in short, it had reference to the ordinary case of a failure of
the parties to agree after a fair attempt to do so.

In the case of *Evergreen Cemetery Association* v. *Beecher*,
53 Conn., 551, this court said :—" The safety of the liv-
ing requires the burial of the dead in proper time and
place ; and inasmuch as it may so happen that no individual
may be willing to sell land for such use, of necessity there
must remain in the public the right to acquire and use it
under such regulations as a proper respect for the memory
of the dead and the feelings of the survivors demands."

To construe the statute in accordance with the defendant's
claim would render it practically inoperative in cases of fre-

quent occurrence, and essentially impair, if it did not practically destroy, the right in question. As it is of the utmost importance that such a right should be preserved unimpaired, a construction of the statute which essentially destroys it ought not to be adopted, unless the language employed will fairly admit of no other; and we think this is not the case with respect to the language in question here.

But the defendant urges that the statute was changed to its present form in 1875, and he strongly insists that in changing the form of the statute the legislature meant to change its meaning. The statute as it was passed in 1849, (Public Acts of 1849, chap. 7,) provided in substance that the additional land required in such cases might be taken under the statute whenever the parties in interest could not agree. The statute remained substantially in this form until 1875, when it was changed to its present form. Apparently the change was made by the revisers, and it was adopted by the legislature. Why it was made we have no means of knowing, and no good reason for making it has been suggested.

Whether, where a change is made in the language of a statute, a change of meaning is also intended, must depend largely upon the facts and circumstances of each particular case. The change in words may be the effect or result of many causes other than an intent to change the meaning of the law. "Hence the presumption of a change of intention from a change of language is of no great weight, and must mainly depend on the intrinsic differences as resulting from the modifications. A mere change in the words of a revision will not be deemed a change in the law unless it appears that such was the intention. The intent to change the law must be evident and certain; there must be such a substantial change as to import such intention, or it must otherwise be manifest from other guides of interpretation, or the difference of phraseology will not be deemed expressive of a different intention." Sutherland on Statutory Construction, § 256.

The right to condemn land for what is deemed to be a

public use is given by statute to counties, towns, school districts, railroad companies, parties who desire to flow land, and to others. In all these cases the right may be exercised on the failure of the parties to agree. No good reason can be given why an exception to this should be made in the case of cemetery associations. Certainly no such exception was made down to 1875. It was just as necessary after 1875 as before, that cemetery associations should possess and exercise the power to take land *in invitum* where they could not agree with the owners upon fair terms.

Looking at all the facts and circumstances under which the change in question was made, as well as the language used in making it, and the purpose and object of the statute, we are irresistibly led to the conclusion that no such change in the law as the defendant contends for was either made or intended.

There is no error in the judgment of the court below.

In this opinion ANDREWS, C. J., CARPENTER and PRENTICE, Js., concurred. SEYMOUR, J., concurred in the result, but died before the opinion was written.