JOHN ROSS vs. FREDERICK B. CROFUTT, DEPUTY
SHERIFF.

Third Judicial District, Bridgeport, April Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

Every possible crime, committed in any State of the United States,
including misdemeanors as well as treason and felony, constitute
extraditable offences under the provisions of Article 4, § 2, of the
Federal Constitution requiring the surrender of fugitives from
justice who are charged with treason, felony, or "other crime."

No State can by legislation limit or abridge the meaning of the word
crime as thus used in that instrument.

In this State the Act of 1852 (General Statutes, §§ 1564–1567) provides
for the surrender of persons charged with felony or other "high
crime." Held:—

1. That by the words quoted the legislature obviously did not intend
to restrict or lessen the crimes for which persons might be extra-
dited, since the Act in express terms was made applicable to "any
case authorized by the Constitution and laws of the United States";
and therefore must have used "high crime" as synonymous with
the word crime in the Federal Constitution.

2. That changes in the form of expression in the Act of 1852, made by
the revisers of the statutes in 1875, were not intended to change the
law, which supposedly covered all offenses extraditable within the
Federal Constitution, but were designed merely to eliminate un-
necessary words and self-evident propositions.

The Act of Congress (Revised Statutes of United States, § 5278) pre-
scribes the procedure for carrying into effect this constitutional
mandate regarding extradition.

Upon a demand for the surrender of a person, two questions present
themselves for the determination of the Governor: first, has the
person demanded been substantially charged with a crime against
the laws of the demanding State, by an indictment, information,
or affidavit properly certified; and second, is he a fugitive from
justice of that State.

Before issuing his warrant of arrest, the chief executive should have
before him a copy of the indictment, information, or affidavits
taken before a magistrate in the demanding State, charging the
fugitive with the commission of a crime in that State; though these
need not be incorporated in the warrant nor attached to it.

Such warrant is of itself prima facie evidence of the regularity of its
issue, and is sufficient to hold the accused until the presumption in
its favor is overthrown by contrary proof.

Ross *v.* Crofutt.

A high crime is one nearly allied and equal in guilt to felony, but which technically does not fall within its definition.

A conspiracy in New York may be either a felony or a misdemeanor.

Revisers are presumed not to change the law, and a mere change in words will not be deemed a change in the law unless it appears that such was the intention.

Submitted on briefs April 18th—decided June 15th, 1911.

PETITION for a writ of *habeas corpus* to determine the legality of the petitioner's detention pending his delivery to an agent of the State of New York in compliance with a requisition from the Governor of that State, brought to and heard by the *Hon. Howard B. Scott,* judge of the Court of Common Pleas in Fairfield County, upon a demurrer to the return of the respondent; said judge overruled the demurrer, dismissed the petition and remanded the petitioner to the custody of the respondent, from which the petitioner appealed. *No error.*

The return of the respondent showed that the petitioner was held under a warrant from the Governor of Connecticut, directing his arrest as a fugitive from justice in response to a demand from the Governor of New York, in pursuance of the Constitution and laws of the United States, and his delivery to an agent of that State. Said demand was accompanied by properly attested copies of the proceedings in said State against the petitioner, and with proper affidavits of witnesses, whereby said petitioner is charged with the crime of conspiracy. Said Governor certifies in said warrant that "said demand is conformable to law and ought to be complied with."

The petitioner demurred to the return because in the warrant it does not appear that he is charged by the authorities of New York with having committed any high crime, and it does not appear but that the crime charged, conspiracy, is a mere misdemeanor in

the Penal Code of New York. The demurrer was overruled, *Scott, J.*, and the petitioner remanded, from which action this appeal was taken.

*William H. Cable*, for the appellant (petitioner).

*Stiles Judson*, State's Attorney, and *Norman C. Beers*, for the appellee (respondent).

WHEELER, J. The purpose of Article Fourth, § 2, of the Constitution of the United States, which requires that "a person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State shall on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime," is to make it the imperative duty of the chief executive of a State to deliver up criminals fleeing from justice for removal to the State from which they flee, and it effectuates its purpose by defining the class of criminals to be surrendered.

In the Articles of Confederation appeared a similar provision, except that the words "high misdemeanor" therein were replaced by the word "crime" in the Constitution, "thereby showing the deliberate purpose to include every offense known to the law of the State from which the party charged had fled." *Kentucky* v. *Dennison*, 24 How. (U. S.) 66, 99, 102.

The word "crime" embraces not only treason and felony but misdemeanors as well, and the language was made "broad enough to include every possible crime committed within the borders of the United States, and that no State should be an asylum for fugitives committing crimes in other States." *Hyatt* v. *Corkran*, 188 U. S. 691, 697, 23 Sup. Ct. Rep. 456; *Ex parte Reggel*, 114 U. S. 642, 649, 5 Sup. Ct. Rep. 1148; *Knox* v. *State*, 164 Ind. 226, 233, 73 N. E. 255.

The meaning of the words "other crime" is settled by the highest judicial authority in repeated decisions, and that meaning fixed by the history surrounding the enactment of this constitutional provision.

The Act of Congress, now § 5278 of the Revised Statutes of United States (Comp. 1901, p. 3597), provides the procedure for carrying out this constitutional provision. In this constitutional provision is found the authority for the Governor to act, and in this statute the procedure to govern him.

The questions before the Governor on an application for the surrender of a person under this provision are twofold: Whether the person demanded has been substantially charged with a crime against the laws of the State from whose justice it is alleged that he has fled, by an indictment, information, or affidavit properly certified, and whether he is a fugitive from justice from that State. *Munsey* v. *Clough,* 196 U. S. 364, 372, 25 Sup. Ct. Rep. 282; *Bruce* v. *Rayner,* 124 Fed. Rep. 481, 482; *Roberts* v. *Reilly,* 116 U. S. 80, 95, 6 Sup. Ct. Rep. 291.

Before issuing his warrant, the Governor should have before him a copy of the indictment or information, or affidavits before a magistrate in the demanding State, and charging the fugitive with crime committed by him in such State. *Compton* v. *Alabama,* 214 U. S. 1, 6, 29 Sup. Ct. Rep. 605.

The warrant of the Governor is prima facie evidence of the regularity of its issue. *Davis' Case,* 122 Mass. 324, 328. And it is prima facie evidence sufficient to hold the accused, until the presumption in its favor is overthrown by contrary proof. *Hyatt* v. *Corkran,* 188 U. S. 691, 711, 23 Sup. Ct. Rep. 456; *Farrell* v. *Hawley,* 78 Conn. 150, 155, 61 Atl. 502.

It need not make such indictment, information, or affidavits a part of it either by incorporation or attach-

ment.  *Whitten* v. *Tomlinson,* 160 U. S. 231, 245, 16
Sup. Ct. Rep. 297; *Nichols* v. *Cornelius,* 7 Ind. 611, 612,
614; 2 Moore on Extradition (Ed. 1891) § 621.

Our own practice accords with this, as does the prac-
tice in all of the States with few exceptions.  Forms of
rendition warrants for most of the States are given in
Moore on Extradition (Vol. 2, Ed. 1891) pp. 1193 to
1514.

The return to the writ of habeas corpus sets out the
Governor's warrant in due form, complying with the
requirements of the law, and fully justifying the sheriff
in detaining the petitioner, unless its recital that the
petitioner "stands charged with the crime of conspir-
acy" fails, as the petitioner urges, to substantially
charge a crime for which a fugitive from justice may
be apprehended and surrendered.

The petitioner relies upon the provisions of our own
statutes prescribing the procedure on requisitions upon
the Governor and the prerequisites to his compliance
with the demand.  Under these the demand must be
for the surrender of a person charged with a high crime.
Conspiracy is not, he insists, a high crime in New York,
but a misdemeanor.  This is not entirely accurate.  We
understand conspiracy in New York may be either a
felony or a misdemeanor.

A high crime is one nearly allied to and equal in guilt
to felony, but technically does not fall within its defini-
tion.  *State* v. *Knapp,* 6 Conn. 415, 417.  Hence the
petitioner claims that the charge in this warrant either.
is or may be a misdemeanor, and the authority of the
Governor cannot be invoked save in a case where the
demanding warrant charges a "high crime."

We have seen that the Federal Constitution used the
word "crime" in Article Fourth, § 2, to include every
form of crime, whether felony or misdemeanor.

Our own statute cannot restrict the meaning of the

word "crime" as used in the Constitution. It must be interpreted either as within this term, or, so far as it may restrict its meaning, it must fall. It is possible, looking at the mere language used, to construe the legislative intent to have been to make the action of the Governor mandatory in cases of "high crime" only, but the history of this statute negatives this construction.

Our statute, now General Statutes, §§ 1564 to 1567 inclusive, first appears as chapter 51 of the Public Acts of 1852, p. 62, and § 1 of that Act reads: "The Governor of this State may, in cases authorized by the constitution and laws of the United States, appoint agents to demand and receive from the executive authority of any other State, any fugitive from justice, or any person charged with felony or other high crime in this State"; and § 3 reads: "When a demand shall be made upon the Governor of this State, by the executive authority of any other State, in any case authorized by the constitution and laws of the United States, for the surrender of any person charged in such State with felony or other high crime, the State Attorney," etc., when required by the Governor, shall forthwith investigate the ground of such demand, etc. "And if it shall appear to the Governor, that such demand is conformable to law, and ought to be complied with, he shall issue his warrant," etc. "Or other high crime" means the crime which is distinguished from the felony by technical circumstance rather than by immorality or unlawfulness.

At the time of its enactment there had been no authoritative construction of § 2, Article Fourth, of the Federal Constitution, by the Supreme Court of the United States.

Eight years later, in *Kentucky* v. *Dennison*, 24 How. (U. S.) 66, 99, the Supreme Court, in an opinion by

Chief Justice Taney, construed the word "crime" in the phrase "treason, felony, or other crime" of this clause to include every offense, misdemeanor as well as felony.

Before that decision there had been some doubt of the meaning of "crime," and it may well be that the General Assembly used "high crime" as the equivalent of the "crime" of the Federal Constitution. But it never intended to exclude any offenses within the Federal Constitution. It expressly gave the Governor power to act in cases authorized by the Constitution and laws of the United States, and it is quite clear from the language used that it was intended to cover all cases, for it provides the remedy "in any case authorized by the Constitution and laws of the United States."

This was the main legislative intent, to furnish an extradition procedure for Connecticut covering every case within the Federal Constitution and laws.

The revisers (Rev. 1875, p. 544) changed the phraseology of the statute by omitting from said § 1, in lines 2 and 3, the words "in cases authorized by the Constitution and laws of the United States," and in line 5 "any" before person, and "felony or other" in line 6, and inserting "any" before high crime in line 6. And in § 3, by omitting the same words. The omission of the words "felony or other" indicates the understanding of the revisers that high crime included felony. The omission of references to the Constitution and laws of the United States indicates the understanding of the revisers that these are unnecessary, since it is only in such cases the Governor can act and in such cases he must act. The revisers sought to change the language and shorten the expression, but not to change the law or its meaning.

Revisers are presumed not to change the law, and a mere change in the words will not be deemed a change

in the law unless it appears that such was the intention. *State* v. *Geer*, 61 Conn. 144, 150, 22 Atl. 1012; *Westfield Cemetery Asso.* v. *Danielson*, 62 Conn. 319, 322, 323, 26 Atl. 345.

The intention of the revisers was to cut out unnecessary words and self-evident propositions, and leave the law as it was covering as they supposed every crime within Federal Constitution and laws.

The law has been preserved since 1875 in the form then adopted. We may then conclude that the legisative intent was not to restrict the meaning of the word "crime" within the technical meaning of "high crime," but to include in the latter term every offense within Federal Constitution and laws.

There is no error.

In this opinion the other judges concurred.