THE COLUMBUS INDUSTRIAL BANK *v.* CHARLES G. MILLER ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued January 6, reargued March 8, decided April 5, 1939.

*Irving Elson,* with whom were *Daniel E. Brennan* and *Daniel E. Brennan, Jr.,* for the appellant (plaintiff).

*Raphael Korff,* with whom was *Milton H. Hausman,* for the appellees (defendants).

*Roger W. Davis* and *Douglass B. Wright,* with the permission of the court, filed a brief as amici curiae.

AVERY, J. The plaintiff, an industrial bank organized and doing business under the provisions of General Statutes, Chapter 211, §§ 4031-4041 as amended, brought an action upon a promissory note against five makers. Two of the defendants filed an answer alleging that the plaintiff charged interest at the rate of more than 12 per cent. on the money loaned, and that the note was unenforceable because of usury. The case was tried to the court and judgment rendered in favor of these defendants, from which the plaintiff has appealed. In its assignments of error, the plaintiff claims certain corrections of and additions to the finding, and that, as corrected, the facts show the transaction was authorized by law and did not offend against the usury statutes. The case was argued at the January term of this court. As far as appeared from the record, in the trial court both parties proceeded upon the theory that the plaintiff was subject to the statutes against usury, General Statutes, Chapter 241, §§ 4729-4737. The brief filed upon behalf of the plaintiff suggested a claim to the contrary, but the matter was not pressed in argument. While it is true that this court is not bound to consider any errors on an appeal unless they are specifically assigned and unless it appears on the record that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claims, or that it arose subsequent to the trial, Practice Book, § 363, the court may nevertheless of its own motion consider an error apparent on the record when the public character of the case and its importance not only to the parties but to the public are deemed sufficient to warrant such a course; *State* v. *Gannon,* 75 Conn. 206, 218, 52 Atl.

727; *Cole* v. *Jerman,* 77 Conn. 374, 382, 59 Atl. 425; *Donovan* v. *Davis,* 85 Conn. 394, 399, 82 Atl. 1025; *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 341, 122 Atl. 91; and in order to prevent manifest injustice, as where it appears that both counsel and the court below overlooked an applicable statute. *Cunningham* v. *Cunningham,* 72 Conn. 157, 160, 44 Atl. 41; *Schmidt* v. *Manchester,* 92 Conn. 551, 555, 103 Atl. 654; *Stevens* v. *Neligon,* 116 Conn. 307, 311, 164 Atl. 661. This court ordered a reargument upon the question whether, since the revision of the General Statutes in 1930, loans made by industrial banks have been subject to the provisions of the usury laws. The case was reargued upon that point at the March term of this court; and as the decision upon this question is decisive of the appeal it is unnecessary to consider the other questions raised by the plaintiff.

Among the operative facts appearing in the finding are these: On November 21, 1931, the defendant Charles G. Miller and four others executed and delivered to the plaintiff their joint and several promissory note in the amount of $1000 payable to the plaintiff or order fifty weeks from its date. The note recited the deposit by the makers, as collateral security, of Installment Certificate of Indebtedness for Investment, of the bank number 10074. The certificate was executed by the bank and by the defendant Charles G. Miller on the same day. It was for $1000 and by its terms the registered owner agreed to pay $1 a week for fifty consecutive weeks for every $50 of the certificate or multiple thereof until the entire sum had been paid. Both the note and certificate contained similar default clauses providing that the entire sum of the note should become due upon failure to pay any installment upon the certificate.

On execution and delivery of the note and the Cer-

tificate of Indebtedness for Investment duly signed by both parties, the plaintiff deducted $60 as interest in advance and 2 per cent. as a service charge and gave the defendant Miller its check for $920. The note and certificate of indebtedness were delivered to the plaintiff simultaneously and bore the same number. It would serve no useful purpose to state the facts in detail. It is sufficient to say, that from all the facts and circumstances the trial court reached the conclusion that the making of the note and the certificate of indebtedness constituted one transaction entered into by the plaintiff with the intent of charging and receiving interest at a greater rate than 12 per cent. per annum and as such was in violation of General Statutes, § 4732. It is obvious that if the note is considered separately from the certificate of indebtedness the $80 deducted as interest in advance for fifty weeks and service charge would not render the note usurious. If, however, the payments upon the certificate were treated as payments upon the note, thereby the amount of the indebtedness would be periodically reduced until the last payment when the indebtedness would be only $20. Computed in this manner, the agreement called for the payment of interest at the rate of more than 12 per cent. per annum upon the amount actually loaned.

The creation of industrial banks was provided for in the Public Acts of 1919, Chapter 196, which contained this provision: "Sec. 12. This act shall not be construed to confer upon any industrial bank any of the powers or exemptions conferred upon banks and trust companies by sections 3955 and 4803 [General Statutes, 1930, § 4737] of the General Statutes except as enumerated in this act." The sections referred to were in the revision of 1918. By an act approved May 23, 1927 [20 Special Laws, p. 460], authority was given

to the Governor to appoint a commission to revise the
General Statutes and the commission was directed to
make a separate list of such statutes as it should con-
sider obsolete and should be repealed and include such
list in its report to the General Assembly of 1929. The
commission compiled and reported to the session of
1929 a list of the obsolete laws determined upon by
them. The General Assembly (Public Acts, 1929,
Chapter 258) adopted the revision prepared by the
commission and directed the commission "to correct,
revise, arrange and include [therein] the public acts
enacted at [the 1929] session." By Chapter 288 of
the Public Acts of 1929, the General Assembly repealed
many earlier laws designated in the list supplied by the
commission. The revision of the General Statutes
submitted to the General Assembly in 1929 omitted
all the laws that had been repealed by Chapter 288 of
the Public Acts of 1929 and all laws or parts of laws
or sections of the public acts which the commission
had indicated as obsolete. The reference table at-
tached to the index of the General Statutes, Revision
of 1930, designates § 12 of Chapter 196 of the Public
Acts of 1919 with the letter "O," the preface to the
index explaining that the use of the letter "O" indi-
cated the law or section to which it was attached as
obsolete, and the term obsolete was defined as signi-
fying "not merely those laws which by their terms
have ceased to be operative, but also those which in
fact, for any reason, have ceased to be effective or
necessary." The compilation of the General Statutes
was resubmitted to the General Assembly in the spe-
cial session of 1929 and adopted, to become effective
September 1, 1930. General Statutes, p. 2009. By
§ 6570 of the General Statutes as adopted, "all public
laws not contained in the foregoing titles, except such

as by particular provision and this title are continued in force," were repealed.

It thus appears that § 12 of Chapter 196 of the Public Acts of 1919 was intentionally omitted by the revisers from the Revision of 1930 and was by the Legislature expressly repealed when the Revision was adopted.

While it is true that a mere change in the words of a revision will not be deemed to effect a change in the law unless it appears that such was the intention, *Westfield Cemetery Asso.* v. *Danielson,* 62 Conn. 319, 322, 26 Atl. 345; *Campbell's Appeal,* 76 Conn. 284, 288, 56 Atl. 554; *Ross* v. *Crofutt,* 84 Conn. 370, 376, 80 Atl. 90; *Waterbury* v. *Macken,* 100 Conn. 407, 412, 124 Atl. 5, nevertheless, where an intent to change the law is evident and certain it cannot be disregarded by the court. *State ex rel. Engelke* v. *Kilmartin,* 86 Conn. 56, 61, 84 Atl. 100. By General Statutes, § 4737, it is provided that the provisions of the usury laws "shall not affect . . . any loan made by any national bank or any bank or trust company duly incorporated under the laws of this state," etc. This phrase includes an industrial bank such as the plaintiff. General Statutes, § 6568, under the title Construction of Statutes, contains this provision: "The term 'banks' shall include all incorporated banks." General Statutes, Chapter 211, provides for the incorporation of industrial banks which shall be subject to the supervision of the bank commissioner. General Statutes, § 4033, authorizes industrial banks to use the word "bank" in their corporate titles. General Statutes, § 4036, provides: "TAXATION. Industrial banks and the stock thereof shall be taxed in all respects as other state banks and the stock thereof, and such banks shall be subject to the same requirements as to making returns for the purpose of taxation." The plaintiff, as an in-

dustrial bank when the contract involved in this suit was made, was clearly within the exemption of § 4737 and not subject to the provisions of the usury laws.

In argument the contention was made in behalf of the defendants that to permit banks of this character in effect to receive more than 12 per cent. interest while other lenders of money are not permitted to do so is discriminatory legislation and contravenes Article First, Sec. 1, of the Constitution of Connecticut and the Fourteenth Amendment to the Constitution of the United States, Section 1. This claim is not tenable. "The General Assembly, in respect to the matter of usury, had the right to deal with different classes of money lenders or money borrowers in a different way, provided there were nothing apparently unreasonable in creating such distinctions, and all the members of each class were treated in the same manner." *State* v. *Hurlburt*, 82 Conn. 232, 234, 72 Atl. 1079; *State* v. *Griffith*, 83 Conn. 1, 3, 74 Atl. 1068, affirmed, 218 U. S. 563, 569, 31 Sup. Ct. 132; *Cohen* v. *Mansi*, 113 Conn. 91, 92, 154 Atl. 160. Whether such legislation is altogether wise and in the best interests of necessitous borrowers, are considerations which might with propriety be urged before the Legislature. The function of the court is to determine not whether it is wise legislation but whether it is within the scope of legislative power.

There is error and the cause is remanded to the Superior Court with direction to enter judgment for the plaintiff for the amount of the note with interest as agreed.

In this opinion the other judges concurred.