361 F.2d 504
 Barbara L. HIATT, Appellant,
v.
SAN FRANCISCO NATIONAL BANK, Doe One, Doe Two, and Federal Deposit Insurance Corporation as Receiver of San Francisco National Bank, Appellees.
 No. 20465.
 United States Court of Appeals Ninth Circuit.
 April 29, 1966.
 
 Edmond C. Ward, Pendergrass, McKenney, Perry & Ward, San Rafael, Cal., for appellant.
 Roy A. Bronson, Alan I. Kaplan, Harold R. McKinnon, Bronson, Bronson & McKinnon, San Francisco. Cal., for appellees.
 Robert D. Raven, Melvin R. Goldman, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for amicus curiae, California Bankers Ass'n.
 Before POPE, BARNES, and ELY, Circuit Judges.
 ELY, Circuit Judge:
 
 
 1
 Appellant, plaintiff below, appeals from the District Court's dismissal of her complaint. The action was based upon the claim that usurious interest had been charged and collected by the appellee, San Francisco National Bank, a national banking association.[1] It was begun in the California state court and removed to the District Court, where jurisdiction was grounded upon the provisions of sections 1346 and 1348 of Title 28, U.S.C. and section 1819 of Title 12, U.S.C.
 
 
 2
 The appellant borrowed a sum of money from the appellee and, by agreement, paid a rate of interest amounting to 25.7 percent per year. The legality of the rate requires answer to the question succinctly put by appellant, "May a bank created and operating under and pursuant to the laws of the United States of America charge any rate of interest in California or is it limited by the provisions of 12 U.S.C. 85?"
 
 
 3
 In pertinent part, 12 U.S.C. § 85 provides,
 
 
 4
 "Any association may * * * charge * * * interest at the rate allowed by the laws of the State, * * where the bank is located, * * * and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter. When no rate is fixed by the laws of the State, * * *, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum * * *" (Emphasis added.)
 
 
 5
 Appellant urges that "no rate is fixed by the laws of the State" and that, hence, appellee was forbidden to collect an interest charge in excess of 10 percent per annum, the maximum chargeable rate permissible to most lenders under California law.
 
 
 6
 Before its repeal in 1918, section 1918 of the California Civil Code, enacted in 1872, provided that parties could agree in writing for the payment of any rate of interest whatsoever. The maximum interest rate was fixed at 12 percent annually by a California initiative measure approved on November 5, 1918. Cal.Civ. Code § 1916-1. Thereafter, on November 6, 1934, certain interest rate limitations were fixed in Section 22 of Article XX of California's constitution. The section fixed the interest rate generally chargeable at 7 percent per year and permitted an amount not exceeding 10 percent per year to be charged by written agreement; however, certain classes of lenders were exempt from the provision of the constitution. Among the exempt were banks "created and operating under and pursuant to any laws" of California or of the United States. The constitutional provision specifically empowered the California legislature to prescribe maximum rates which might be charged by the exempt classes of lenders, but, remarkably, the legislature has failed, with respect to banks, to exercise the authority which it received nearly thirty-two years ago. The neglect moved California's Supreme Court to observe, in 1949, "Those who voted for the 1934 amendment had reason to expect that the exempt classes would not remain unregulated indefinitely." Carter v. Seaboard Finance Co., 33 Cal.2d 564, 582, 203 P.2d 758 (1949). And the court, stating the California rule as it yet remains, continued, "But until the legislature exercises the power granted to it by the amendment to regulate the business of lenders in a manner appropriate to each exempted class, the class not so governed by the legislation is subject to no restriction on interest rates or charges." 33 Cal.2d at 582, 203 P.2d at 770.
 
 
 7
 Banks which are created and which operate under the laws of California are not "governed by the [California] legislature" in the charging of interest; therefore, they are "subject to no restriction on interest rates or charges". Appellant interprets the last quoted language to mean that "no rate is fixed by the laws of the State" under the language of 12 U.S.C. § 85 and upon that interpretation bases her insistence that appellee charged an interest rate impermissibly excessive under the federal statute. She maintains that the section's language which appears to allow a national bank located in a particular state to charge as much interest as is chargeable by the state's banks under its local laws is inapplicable. She contends that since California law fixes no allowable maximum interest rate whatsoever with respect to its state banks, "a different rate is [not] limited for banks organized under State [California] laws" and the condition for the applicability of the provision is nonexistent.
 
 
 8
 Appellant's contentions are ingenious and technically forceful. They also appeal to an equitable sense offended by oppressively exorbitant charges; nevertheless, we are convinced that they must be rejected. Considering the federal statute in its entirety, we clearly see a congressional intent that the competitive opportunities of a national bank operating in a certain state should not be impeded by congressional limitations on interest charges which are more restrictive than state limitations imposed upon the state's banks. This intent has twice been emphasized by the Supreme Court. As early as 1874, it was written,
 
 
 9
 "The defendant [bank] is not to be subjected to a penalty [for usurious charges] unless the words of the statute precisely impose it.
 
 
 10
 * * * * * *
 
 
 11
 "It cannot be doubted, in view of the purpose of Congress in providing for the organization of National banking associations, that it was intended to give them a firm footing in the different States where they might be located. It was expected that they would come into competition with State banks, and it was intended to give them at least equal advantages in such competition. In order to accomplish this they were empowered to reserve interest at the same rates, whatever those rates might be, which were allowed to similar State institutions." (Emphasis added.)
 
 
 12
 Tiffany v. National Bank of Missouri, 18 Wall. (85 U.S.) 409, 410, 412, 21 L.Ed. 862 (1873).
 
 
 13
 In Daggs v. Phoenix National Bank, 177 U.S. 549, 20 S.Ct. 732, 44 L.Ed. 882 (1900), the Court wrote,
 
 
 14
 "The meaning of these provisions [in the federal statute] is unmistakable. A national bank may charge interest at the rate allowed by the laws of the state or territory where it is located; and equality is carefully secured with local banks." (Emphasis in original.)
 
 
 15
 "* * * The intention of the national law is to adopt the state law, and permit to national banks what the state law allows to its citizens and to the banks organized by it." (Emphasis added.)
 
 
 16
 177 U.S. at 555, 20 S.Ct. at 735. (Citations omitted.)
 
 
 17
 We cannot avoid the plain direction of the foregoing expressions of the Supreme Court. In Daggs, the defendant national bank was located in Arizona, where the state law provided that "Parties may agree in writing for the payment of any rate of interest whatever * * *." 177 U.S. at 554, 20 S.Ct. at 734. There, as here, it was contended that the Arizona statute fixed no maximum rate of interest for Arizona state banks and that it followed that the national bank was prohibited from charging a rate in excess of the rate specified in the federal statute. The contention was rejected. The silence of California's legislature produces the same effect in California as that resulting in Arizona from the Arizona statute authorizing lenders and borrowers to "agree in writing for the payment of any rate of interest whatever". This being true, there is no distinction sufficient to justify a conclusion here which would oppose that reached by the Supreme Court in its analysis of the federally prescribed permissions and restrictions as affected by the terms of the Arizona statute.
 
 
 18
 No specific maximum rates were "fixed" by the Arizona statute, but in true effect, the law in both Arizona and California has "fixed" the rates for state banks in the two jurisdictions as without limitation except such as may be established by agreements between the banks of the two states and those who borrow from them.
 
 
 19
 Our conclusion must necessarily be that the language of 12 U.S.C. § 85 which reads "Any association may * * * charge * * * interest at the rate allowed by the laws of the State * * * where the bank is located * * *" should be construed as meaning that a national association located in a particular state may charge as much interest as may be legally charged by the state's banks under the state's existing law.
 
 
 20
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Appellee San Francisco National Bank is in receivership. Federal Deposit Insurance Corporation, its Receiver, was named as a defendant in plaintiff's complaint and is also an appellee herein