STATE NATIONAL BANK OF CONNECTICUT *v.*
HARRY COHEN ET AL.

| SUPERIOR COURT | FAIRFIELD COUNTY<br>AT BRIDGEPORT | FILE No. 155086 |
|---|---|---|

Memorandum filed July 10, 1975

*Jones, Damia, Deakin & Wellman,* for the plaintiff.

*Bernard Green,* for the defendants.

*Sidney Burger,* for the named defendant.

MIGNONE, J. The complaint in the instant matter seeks payment on a certain note signed by the three individual defendants calling for interest at the rate of 15 percent per annum together with interest on any unpaid balance of either principal or interest after maturity for a total of 18 percent. Those defendants have filed a special defense in their answer alleging that the loan made by the plaintiff to them was in violation of Connecticut laws and

federal statutes pertaining to usury. The plaintiff has demurred to the special defense alleging usury, presenting the issue to be determined herein.

It is admitted that the plaintiff is a federally chartered national bank. The defendants make the claim that the issue here raises a question of fact as to a specific unlawful intent which can be decided only at trial. The defendants' reliance on *Community Credit Union, Inc.* v. *Connors,* 141 Conn. 301, 307, on that point does not hold up since the payee in that case was not a bank. The law in Connecticut is clear in that § 37-4 of the General Statutes prohibits the making of loans at a greater interest rate than 12 percent. But § 37-9 states in plain language that § 37-4, as well as § 37-5, does not apply, inter alia, to "any loan made by any national bank or any bank or trust company incorporated under the laws of this state."

The defendants press the claim that, on the authority of a very early United States Supreme Court decision, *Daggs* v. *Phoenix National Bank,* 177 U.S. 549 (1900), a national bank is limited to charging only the maximum rate specifically set by statute—in this case the 12 percent provided for in § 37-4.

Two recent federal court decisions dealing with the applicable federal statute, 12 U.S.C. § 85 (1970), as amended (Sup. IV, 1974), are in point on the legal issue presented herein. *Hiatt* v. *San Francisco National Bank,* 361 F.2d 504 (1966) dealt with a California situation where certain maximum interest rates were fixed by § 22 of article 20 of California's constitution. Certain classes of lenders, including "banks" created and operating under and pursuant to any laws of California or of the United States, were, however, specifically exempted therefrom. That is essentially the situation presented here. The decision in *Hiatt* turned on the claim

that since California did not prescribe a fixed maximum rate of interest for a bank, the defendant bank was limited to charging no more than the maximum 7 percent interest rate set out in 12 U.S.C. § 85 and made applicable "[w]hen no rate is fixed by the laws of the State" with reference to banks. In *Hiatt* the plaintiff likewise claimed that the provision of 12 U.S.C. § 85 that "[a]ny association may . . . charge . . . interest at the rate allowed by the laws of the State, . . . where the bank is located, . . . and no more" required the holding that the defendant bank could not charge more than the permissible maximum of 7 percent under 12 U.S.C. § 85. The decision states (p. 506): "She [The plaintiff] contends that since California law fixes no allowable maximum interest rate whatsoever with respect to its state banks, 'a different rate is [not] limited for banks organized under State [California] laws' and the condition for the applicability of the provision is nonexistent."[1]

The *Hiatt* decision, furthermore, interpreted the effect of the decision in *Daggs* v. *Phoenix National Bank,* 177 U.S. 549, contrary to that advanced by the defendants. In *Daggs,* where the defendant national bank was located in Arizona, the United State Supreme Court stated (p. 555): "The meaning of these provisions [in the federal statute] is unmistakable. A national bank may charge interest at the rate *allowed* by the laws of the State or Territory where it is located; and equality is carefully secured with local banks. . . . The intention of the

---

[1] In pertinent part, 12 U.S.C. § 85 provides: "Any association may . . . charge . . . interest at the rate allowed by the laws of the State, . . . where the bank is located, . . . and no more, except that where by the laws of any State a different rate is limited for banks organized under State laws, the rate so limited shall be allowed for associations organized or existing in any such State under this chapter. When no rate is fixed by the laws of the State . . . , the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum . . . ."

national law is to adopt the state law, and permit to national banks what the state law allows to its citizens and to the banks organized by it." Significantly relevant to the issue presented before this court, the *Hiatt* decision pointed out (p. 507): "No specific maximum rates were 'fixed' by the Arizona statute, but in true effect, the law in both Arizona and California has 'fixed' the rates for state banks in the two jurisdictions as without limitation except such as may be established by agreements between the banks of the two states and those who borrow from them. Our conclusion must necessarily be that the language of 12 U.S.C. § 85 which reads 'Any association may . . . charge . . . interest at the rate allowed by the laws of the State . . . where the bank is located . . .' should be construed as meaning that a national association located in a particular state may charge as much interest as may be legally charged by the state's banks under the state's existing law."

Of similar import is the decision in *Northway Lanes* v. *Hackley Union National Bank & Trust Co.*, 464 F.2d 855 (1972). That decision made note (p. 864) of the administrative interpretations of comptrollers of the currency, quoting from a ruling appearing in 12 C.F.R. § 7.7310: "A national bank may charge interest at the maximum rate permitted by State law to any competing State-chartered or licensed lending institution. If State law permits a higher interest rate on a specified class of loans, a national bank making such loans at such higher rate is subject only to the provisions of State law relating to such class of loans that are material to the determination of the interest rate. For example, a national bank may lawfully charge the highest rate permitted to be charged by a State-licensed small loan company or morris plan bank, without being so licensed."

Our own Supreme Court made a clear-cut holding in *Columbus Industrial Bank* v. *Miller,* 125 Conn. 313, 320, that no unlawful discrimination results from the fact that § 37-4 of the General Statutes, prohibits a person, firm, or corporation from loaning money "to any person" and receiving, directly or indirectly, interest at a rate greater than 12 percent per annum, whereas a national bank or any bank or trust company incorporated in Connecticut is specifically exempted from the proscription established by § 37-4. As *Columbus Industrial Bank* v. *Miller,* supra, 320, stated, quoting from *State* v. *Hurlburt,* 82 Conn. 232, 234, " 'The General Assembly, in respect to the matter of usury, had the right to deal with different classes of money lenders or money borrowers in a different way, provided there were nothing apparently unreasonable in creating such distinctions, and all the members of each class were treated in the same manner.' "

For the reasons hereinabove set out, the plaintiff's demurrer to the defendants' special defense alleging usury is sustained.