**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 24, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARIE T. GIANNANGELI,

      Plaintiff–Appellant,

v.

TARGET NATIONAL BANK, N.A.,

      Defendant–Appellee.

No. 12-1344
(D.C. No. 1:11-CV-02154-WJM-MEH)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before, **KELLY**, **LUCERO**, and **PHILLIPS**, Circuit Judges.

---

Plaintiff Marie Giannangeli filed a putative class action complaint against Target National Bank ("Target"),[1] alleging that Target committed usury by charging more than the seven percent maximum interest rate found in the National Banking Act ("NBA"), 12 U.S.C. §§ 85 & 86. The district court granted Target's motion to dismiss. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

[1] Target National Bank is the correct name of the company designated in the caption as Target National Bank, N.A.

# I

Giannangeli's complaint sets forth a simple factual premise. She obtained a Target "REDcard" credit card in 2009 and received a copy of the credit card agreement from Target.[2] Giannangeli subsequently incurred and paid interest charges on the credit card account. The complaint asserts that under the credit card agreement, the interest rate charged:

> should have been 13.25%, 17.25%, or 22.90%. However, the Agreement also states that Target "may change the terms, including your APR, at any time . . .[ .]" In fact, Target always charged [Giannangeli] well in excess of the interest rates stated in the Agreement with a minimum interest charge of 25.99%.

Giannangeli's complaint further alleges that the NBA allows national banks to charge no more than seven percent interest unless the bank's state of residency fixes a specific numerical maximum rate of interest. Because South Dakota, Target's home state, does not set a particular numerical maximum rate of interest, the complaint states that Target committed usury by charging Giannangeli and other members of the purported class more than seven percent interest.

# II

We review a district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) de novo, "accept[ing] as true all well-pleaded factual allegations in the complaint and

---

[2] Counsel for Target stated at oral argument that the credit card agreement attached to Giannangeli's complaint, dated 2010, was not the agreement she received in 2009. As Target acknowledged, that issue is immaterial to the outcome of this case.

view[ing] them in the light most favorable to the plaintiff." Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013). We need not, however, accept as true the legal conclusions contained in the complaint. Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## A

The NBA allows a party to "recover back . . . twice the amount of the interest" paid on a debt if the "rate of interest" was "greater than is allowed by" 12 U.S.C. § 85. 12 U.S.C. § 86. Section 85 permits a bank to charge "interest at the rate allowed by the laws of the State, Territory, or District where the bank is located." § 85. However, if "no rate is fixed by the laws of the State, . . . the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum." Id.

In Daggs v. Phoenix National Bank, 177 U.S. 549 (1900), the Supreme Court addressed a usury claim based on an earlier but substantially identical version of the NBA and an Arizona law that allowed parties to "agree in writing for the payment of any rate of interest whatever on money due or to become due on any contract." Id. at 554 (quotation omitted). Faced with the argument that, because "the rate of interest is not fixed by the laws of the territory," national banks could not charge more than seven percent interest, id. (emphasis in original), the Supreme Court held that national banks "may charge interest at the rate allowed by the laws of the state or territory where it is

-3-

located," id. at 555 (emphasis in original). "'Fixed by the laws,'" the Court concluded, "must be construed to mean 'allowed by the laws,' not a rate expressed in the laws." Id.

Giannangeli's claims in the present matter are controlled by Daggs. She argues that national banks in South Dakota may not charge an interest rate greater than seven percent because South Dakota law does not fix a particular numerical maximum interest rate, but instead permits parties to "establish the interest rate or charge by written agreement," including credit card agreements. S.D. Codified Laws § 54-3-1.1; see also § 54-11-9. This statute is similar to the Arizona law at issue in Daggs, and we agree with several other courts that Daggs applies with equal force. See Hawkins v. Citicorp Credit Servs., Inc., 665 F. Supp. 2d 518, 523 (D. Md. 2009) (holding that Daggs controlled similar suit involving South Dakota provision at issue in this case); Citibank (S.D.), N.A. v. DeCristoforo, 987 N.E.2d 619, 2013 WL 2111637, at *3 (Mass. App. Ct. May 17, 2013) (unpublished) (same); Citibank S.D. NA v. Machleid, 154 Wash. App. 1033, 2010 WL 428006, at *5 (Wash. Ct. App. Feb. 8, 2010) (unpublished) (same).

Giannangeli argues that Daggs should be limited to its facts. In particular, she contends that the decision in Evans v. National Bank of Savannah, 251 U.S. 108 (1919), necessarily relied on an interpretation of the NBA inconsistent with Daggs. We disagree. Evans addressed whether a national bank could discount short-term notes at the highest interest rate allowed to state banks, even if the discount would have been usurious if made by a state bank. 251 U.S. at 109, 112. The portions of the opinion that Giannangeli quotes are not incompatible with Daggs. For example, Giannangeli interprets Evans'

-4-

statement that the NBA "adopts usury laws of the states only in so far as they severally fix the rate of interest," id. at 111, as requiring that the state laws set a specific numerical maximum. But this statement does not require that the maximum rate be a specific number determined by statute. Evans itself says that federal law "completely defines what constitutes the taking of usury by a national bank, referring to the state law only to determine the maximum permitted rate." 251 U.S. at 114 (emphasis added). Evans neither reverses Daggs nor limits it to its facts.

Nor does Beneficial National Bank v. Anderson, 539 U.S. 1 (2003), command a different result. Beneficial addressed whether a state court action against a national bank under "the common law usury doctrine" and state usury law is removable "because it actually arises under federal law." Id. at 3-4. The Supreme Court held that the NBA completely preempted state law usury suits against national banks, id. at 11, noting that the NBA refers "to the state law only to determine the maximum permitted rate," id. at 10 (quotation omitted). Contrary to Giannangeli's argument, this statement does not require that the "maximum permitted rate" must be a specific numerical maximum rate of interest. We do not discern any inconsistency between the language in Daggs permitting rates determined by contract and the language in Beneficial describing the "maximum permitted rate."

In South Dakota, the "maximum permitted rate" may be fixed by written agreement of the parties. S.D. Codified Laws § 54-3-1.1. And under Daggs, Target "may charge interest at the rate allowed by the laws of" South Dakota, even if that rate is

-5-

25.99% or more. <u>Daggs</u>, 177 U.S. at 555; <u>see also</u> <u>Hiatt v. S.F. Nat'l Bank</u>, 361 F.2d 504, 507 (9th Cir. 1966) (concluding in a similar suit that "there is no distinction sufficient to justify a conclusion here which would oppose that reached by the Supreme Court" in <u>Daggs</u>).

**B**

Giannangeli's opening brief includes a perfunctory alternative argument that Target committed usury because her agreement with Target was illusory and Target charged interest in excess of the rate authorized by that agreement. The district court denied Giannangeli's motion to alter or amend the judgment on these grounds because she failed to raise them in her complaint or in her response to Target's motion to dismiss.

We review the district court's denial of a motion to alter or amend a judgment for abuse of discretion. <u>See</u> <u>Rademacher v. Colo. Ass'n of Soil Conservation Dists. Med. Benefit Plan</u>, 11 F.3d 1567, 1572 (10th Cir. 1993). A party may not use such a motion to advance arguments that should have been raised earlier. <u>See</u> <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005, 1012 (10th Cir. 2000). Our review of the record supports the district court's conclusion that Giannangeli failed to assert her alternative arguments in an appropriate fashion. The district court therefore did not abuse its discretion in denying the motion, and we will not consider her waived arguments. We do not address or express any opinion on the merits of Giannangeli's argument in this part, we merely hold that the district court did not abuse its discretion in denying the motion on the basis that the arguments were waived for not having been properly raised in the pleadings.

## III

Giannangeli additionally argues that the statutory history of the NBA reflects congressional intent to prevent national banks from charging unfettered interest rates and that South Dakota's statute undermines the usury protections in the NBA.  If Congress is dissatisfied with the courts' interpretation of the NBA or concerned that state law is undermining its protections, it may modify the statute.  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 604 (2010) (Congress may amend a statute if it disagrees with the Supreme Court's interpretation of the law).  We are obligated to apply the Supreme Court's holding in Daggs.

We **AFFIRM**.


Entered for the Court


Carlos F. Lucero
Circuit Judge