Hadley, PJ.
The plaintiff, Citibank (South Dakota), N.A. (“Citibank”), filed a civil action against the defendant, Cindy M. Giovine (“Giovine”), in the Pittsfield Division of the District Court Department to recover an unpaid balance on a credit card account. Summary judgment was entered for Citibank, and Giovine filed this appeal. Giovine contends that the interest rates, penalties, and fees that Citibank charged her were unconscionable and usurious. She also asserts that the trial court erred in denying a motion to compel Citibank to explain the various components of its damages claim. Giovine further asserts that the trial court improperly allowed Citibank to introduce a purported credit card agreement as a business record in connection with its motion for summary judgment. After considering the pleadings and the arguments of the parties, we reverse the decision allowing Citibank’s motion for summary judgment, having found that the purported credit card agreement did not meet the requirements of Mass. R. Civ. R, Rule 56(e).
Citibank is a national bank and has a usual place of business in South Dakota. Giovine is a resident of Massachusetts. In May, 2010, Citibank commenced this civil action against Giovine, alleging she owed $39,973.76 as the unpaid balance on a credit card. The defendant answered, denying this allegation and asserting multiple defenses, including assertions that the rates of interest, penalties, and fees charged by Citibank were usurious, unconscionable, and in violation of various Massachusetts statutes.
In the course of discovery, Giovine propounded interrogatories to Citibank. Among other inquiries, Giovine asked Citibank to “itemize fully” the amount of money Citibank alleged she owed. Giovine asked Citibank to break down various components of the alleged debt, identifying separately principal, interest, and penalties, and to explain how each component was calculated. Citibank, citing Mass. R. Civ. P, Rule 33(c), produced a number of documents. These included a “Citi Diamond Preferred Application Form” that bore Giovine’s signature; a “Card Agreement”; and seventy-seven pages of credit card statements that Citibank asserted were mailed to Giovine between October, 2006 and March, 2010. These statements reflect several transfers of relatively large balances owed to other credit card *74 companies; payments made by Giovine; varying rates of interest; and the assessment of late fees when payments were not received timely. Giovine sought an order from the court compelling more detailed answers from Citibank, but the motion judge found that Citibank’s answers satisfied the requirements of Mass. R. Civ. R, Rule 33(c).
In 2011, Citibank moved for summary judgment. This motion was supported by an affidavit from the custodian of Citibank’s credit card account records and the aforementioned documents that Citibank had produced in discovery. Through the affidavit and these documents, Citibank demonstrated that the defendant applied for a credit card and began using the credit card in October, 2006. The documents included a card agreement bearing a copyright date of 2007 and copies of the monthly statements sent to Giovine. According to these records, Giovine owed a balance of $39,973.76 as of April, 2010. The defendant did not submit an affidavit or any contradictory documents. She challenged, however, the admissibility of the records offered by Citibank and argued that the interest rates charged by Citibank, which ranged from 0% to 9.4% to 28.99%, and the penalties and related fees Citibank assessed violated G.L.c. 271, §49; G.L.c. 107, §3; G.Lc. 140D; G.L.c. 93A; and 12 U.S.C. §85, and were usurious, unconscionable, and void.
The motion judge found that the relevant facts were not in issue. From the records submitted, he determined that the defendant had applied for a Citibank credit card and had transferred previous balances owed on other cards to this account. He found that upon her default in payment, the interest rate had increased to 28.99%, pursuant to the terms of the card agreement produced by Citibank. Citing Citibank (South Dakota), NA. v. Shapiro, 2010 Mass. App. Div. 275, the court found that the rates of interest were not usurious and did not violate Massachusetts law. Citibank’s motion for summary judgment was allowed, and Giovine’s cross motion for summary judgment was denied. This appeal followed.
With regard to Giovine’s assertion that the trial court erred in denying her motion to compel further answers to interrogatories, we find that the trial court acted properly. Rule 33(c) of the Mass. R. Civ. P. provides that “it is a sufficient answer to such an interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries.” In this case, Citibank provided Giovine with all the records relevant to its claim, and it was not “virtually impossible for anyone other than Citibank’s employees to decipher them,” as Giovine complained. Citibank’s response was adequate and in compliance with the requirements of Mass. R. Civ. R, Rule 33(c), as the burden of deriving the information Giovine sought from the records was substantially the same for both parties.
With regard to the rates of interest she was charged, in her argument before the motion judge and in her pleadings filed with this Division, Giovine relied heavily upon a decision of a Superior Court judge in Citibank (South Dakota), NA. v. DeCristofaro, Essex Superior Court, No. ESCV2009-02536 (January 4,2011), holding that interest rates greater than 18% assessed to a defaulting credit card borrower are unconscionable in Massachusetts. In that case, judgment entered in favor of Citibank, but the credit card agreement was reformed, with the interest rate recalculated at 18%. Before this matter was argued before us, however, the Superior *75 Court decision was vacated by the Appeals Court in a Rule 1:28 decision.
In Citibank (South Dakota), NA. v. DeCristofaro, No. 12-P-603 (Mass. App. Ct. May 17, 2013) (unpublished Rule 1:28 decision), the Appeals Court found that this issue was controlled by Daggs v. Phoenix Nat’l Bank, 177 U.S. 549 (1900). In that case, the United States Supreme Court considered the relationship between the National Banking Act, 12 U.S.C. §85, and state interest-setting laws. In Daggs, the Court found that Arizona law allowed parties to set any rate of interest by written agreement and did not articulate a maximum allowable rate. The Court found that “[t]he intention of the national law is to adopt the state law, and permit to national banks what the state law allows to its citizens and to the banks organized by it.” Id. at 555. Pursuant to the Daggs decision, a state law that allows the parties themselves to agree to an interest rate, without expressly articulating a maximum under state law, is for purposes of the National Banking Act equivalent to a law that sets a designated maximum legal interest rate.
Applying this decision to the facts presented in DeCristoforo, a panel of the Massachusetts Appeals Court concluded that the “South Dakota statute, as did the Arizona statute, fixes interest rate for purposes of the NBA. Citibank is therefore not limited to the seven percent cap, and consistent -with South Dakota law, may charge any interest rate that a customer agrees to in writing.” Citibank (South Dakota) NA. v. DeCristoforo, supra. See also Rockland-Atlas Nat’l Bank of Boston v. Murphy, 329 Mass. 755, 759 (1953); Westminster Nat’l Bank v. Graustein, 270 Mass. 565, 586-587 (1930); Citibank (South Dakota), NA. v. Shapiro, 2010 Mass. App. Div. 275, 278.
Pursuant to 12 U.S.C. §85, a national bank such as Citibank that is based in South Dakota may charge interest at any rate allowed by the law of South Dakota, and under South Dakota law, that rate is whatever is set forth in a written credit card agreement entered into between the parties. Therefore, with regard to Giovine’s assertions that the rates of interest she was charged by Citibank were usurious in violation of Massachusetts law, if the parties have a written agreement, the provisions of the National Banking Act and South Dakota law control. As the United States Supreme Court has held that the National Banking Act preempts any common law rule or statute that would treat interest rates allowed under the National Banking Act as usurious, see, e.g., Beneficial Nat’l Bank v. Anderson, 539 U.S. 1, 10 (2003), the rates oí interest charged by Citibank are not unconscionable k they are established “by written agreement” of the parties pursuant to S.D. Codified Laws §54.3.1.1.
Finally, we consider Giovine’s challenge to the motion judge’s decision to consider the "Card Agreement” Citibank provided in support of its motion for summary judgment. Giovine did not file a motion to strike the affidavit filed by Citibank, but in her memorandum in opposition to Citibank’s motion for summary judgment, she asserted that the records that were submitted in support of Citibank’s motion were not admissible, as they constituted hearsay and did not comply with the requirements of the Massachusetts Business Records Act, G.L.c. 233, §78. Giovine argues that Citibank did not produce an admissible signed agreement between the parties, and that a written agreement is required in order for Citibank to exceed lawfully the maximum rate of interest allowed in Massachusetts.
The notarized affidavit Citibank supplied came from an individual named Kathy Rizor (“Rizor”). In her affidavit, Rizor represented that the statements contained *76 therein were “true and correct to the best [other] knowledge, information and belief based on either personal knowledge or review of the business records described [therein].” Rizor stated that she is employed by a subsidiary of Citibank that services credit card accounts owned by Citibank and that maintains and records information in Citibank’s records as they relate to credit card accounts owned by Citibank. “Her responsibilities include being a custodian of records for [the subsidiary] and Citibank with respect to credit cards issued by Citibank.” She stated that she “has knowledge of, and access to, relevant account information and records concerning Citibank account number ending in 3442 (the ‘Account’), which is the subject of this lawsuit, including: the name and address of the debtor (hereafter ‘Defendant^); that the defendant did apply for and was issued the Account; the Account’s history of charges representing extensions of credit, finance charges, fees imposed, payments made and credits received; and the outstanding balance due on the Account.”
Attached to Rizor’s affidavit were three exhibits. Rizor stated in her affidavit that these exhibits are true and correct business records reflecting information created and maintained by Citibank or its affiliates in good faith; in the course of regularly conducted business activity; and as part of the regular practice of Citibank to create and maintain such information. She stated that the exhibits “were created and/or amended at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.”
Rizor went on to state that “Citibank records reflect that the defendant did use or authorize the use of the Account for the purposes of obtaining extensions of credit to purchase goods and services and/or cash advances. Attached hereto as Exhibit A is a copy of the credit application submitted by Defendant to Plaintiff for this account.” Exhibit A is a “City Diamond Preferred Application Form” that bears the signed name of Cindy M. Giovine. Printed on the face of the Application Form are the words, “Please see back of letter for the Citibank Disclosures, which include rates, fees, and other cost information.” Below Giovine’s signature is the statement, “By signing above, I certify that I have read the Citibank Disclosures, and agree to and meet the Terms and Conditions of Offer on the reverse side.” Nowhere in Rizor’s affidavit is there a specific statement as to what “rates, fees, and other cost information” were set forth on the back of the letter referenced in the Application Form, and no letter was introduced by Citibank. Similarly, no document was provided that Rizor specifically purported was on the “reverse side” of the Application Form.
Rizor states in her affidavit that “Defendant, having agreed to the terms and conditions of the Account by Defendant’s use of the Account, did eventually fail to make timely payments on the Account according to the terms of the credit card agreement and as requested on the periodic billing statements. A copy of the applicable terms and conditions of the account is annexed hereto as Exhibit B.” Exhibit B is a sixteen-page document entitled “Card Agreement.” It states that it is “your contract with us and governs the use of your card and account.” It sets forth multiple terms and conditions, including Citibank’s right to charge a default rate of interest up to 28.99%, as well as its right to assess late fees and other transaction fees. In a number of places, the document bears the notation “© 2007 Citibank (South Dakota), N.A.” The Card Agreement states that its terms and enforcement of the agreement “shall be governed by federal law and the law of South Dakota.”
*77 Finally, the Rizor affidavit states, “Defendant has been provided periodic billing statements for the Account (other than months in which no statement may have been required under applicable law), describing the amount due. Copies of all available monthly account statements sent to Defendant are annexed hereto as Exhibit C.” Exhibit C consists of seventy-seven pages of account statements addressed to Giovine. The very first statement includes a message welcoming Giovine to Citibank and instructing her to call customer service if she has not received her “new card.” It shows an opening balance owed of zero dollars and a statement closing date of October 11, 2006. The last statement included within Exhibit C reflects a balance of $39,973.76.
As noted above, as a national bank located in South Dakota, Citibank is not constrained by Massachusetts law with regard to the rate of interest it may charge if there is a written agreement between the parties establishing a higher rate. In order to establish that it may lawfully charge Giovine the default interest rate of 28.99%, however, Citibank bears the burden of proving the existence of such a written agreement that includes this term. Rule 56(e) of the Mass. R. Civ. P. requires that an affidavit offered in support of a motion for summary judgment “shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.”
Pursuant to G.L.c. 233, §78, business records are admissible if they meet certain criteria. The court must find that the entry or record was made “in good faith in the regular course of business and before the beginning of the civil or criminal proceeding [in which the entry or record is offered] and that it was the regular course of such business to malee such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter.” G.L.c. 233, §78. The entry or record must also be authenticated by a witness who is familiar with it. Commonwealth v. Duddie Ford, Inc., 28 Mass. App. Ct. 426, 435 (1990). The foundation for the admissibility of business records does not need to be established through the testimony of the person who prepared the record, but the record must reflect information based on personal knowledge of an individual or individuals “who have a business interest to report accurately.” Wingate v. Emery Air Freight Corp., 385 Mass. 402, 410 (1982) (Liacos, J., concurring).
Here, Citibank relies on an affidavit from Rizor who is not an employee of Citibank, but who has the authority to maintain credit card account information. The account statements, she maintains, are admissible and were properly considered by the trial court. The Card Agreement she referenced in her affidavit, however, should not have been considered. Rizor does not profess to have personal knowledge of this document and her affidavit does not demonstrate a basis for concluding that the “Card Agreement” sets out the terms of an agreement Giovine was sent and agreed to, or that falls into a separate exception to the hearsay rule. Rizor does not, for example, state that Exhibit B is the model credit card agreement that was routinely sent to every credit card holder at the time Giovine received Exhibit A, the Application Form. Exhibit B, moreover, bears a copyright mark dated 2007, the year following Giovine’s first billing statement as reflected in Exhibit C. On the state of the record, Citibank was not entitled to summary judgment on its claim, because its motion was supported by an inadmissible conclusory, hearsay statement by Rizor *78 that Exhibit B is a “copy of the applicable terms and conditions of the account.”
For this reason, the decision ordering entry of summary judgment for Citibank is reversed and the case is remanded to the Pittsfield District Court for further proceedings.
So ordered.